## J. A. TAYLOR v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

Division Two, December 22, 1925.

1. **JURISDICTION: Wrong Name: Railway for Railroad: Petition and Service.** Where the petition, summons and return name a defendant which was actually served, by a name not its real name, an amendment of the petition and return to show the true name is permitted. Where the action named the Missouri Pacific Railway Company as the defendant, and the summons was directed to that company, and the sheriff's return showed service, by delivering a copy of the writ and petition to "P. R. Bailey, Station Agent at Lutesville, in said county, of said defendant corporation, he being then and there in said defendant's usual business office and in charge thereof, the president or other chief officer of said Missouri Pacific Railway Company not having been found in said County of Bollinger," and the actual defendant and the company actually served was the Missouri Pacific Railroad Company, it was proper to permit plaintiff, upon motion reciting the facts and conclusive proof thereof, to amend the petition by substituting the name of the Missouri Pacific Railroad Company as the defendant, and to amend the sheriff's return to show that Bailey was the agent at said station of said Railroad Company; and such amendments being made, a judgment against said Railroad Company was within the jurisdiction of the court.

Taylor v. Mo. Pac. Railroad Co.

2. **NEGLIGENCE: Railroad: Snow and Ice on Car Steps.** A railroad company is not bound to a continuous inspection of the steps of its passenger cars, but it is bound to exercise the care required of a carrier to provide for the safety of its passengers; and where accumulations of snow and ice on the steps of a passenger car have become dangerous to passengers alighting therefrom, whether the snow was tracked upon them by passengers and others boarding the train at previous stations or fell upon them the day or night before or during the progress of the train, and the danger is obvious or can be discovered by proper care, or the dangerous accumulation has existed for a length of time sufficient to enable the company, by the exercise of proper care, to remove it, and it does not, it is liable for injury resulting therefrom to a passenger alighting from the car in the exercise of due care.

3. ——: ——: ——: **Classification: Mud: Banana Peelings.** Mud, banana peelings and things of that kind, which trainmen of ordinary observation would not notice upon the steps of passenger cars, are not in the same class with snow and ice from a half inch to an inch and a half thick, which have been continuously tracked upon the steps at five or six preceding stations where passengers were received and where the trainmen themselves used the steps and therefore knew, or by the exercise of ordinary care would have known, of their dangerous condition.

4. **SNOW AND ICE ON CAR STEPS: Instruction: Safely Boarding Car: Injury in Alighting.** In an action wherein plaintiff alleges that the carrier negligently permitted snow and ice to accumulate on the steps of the passenger car and that in attempting to alight he slipped and fell from the steps and was injured, an instruction for the defendant carrier, telling the jury that if they found that the steps were in a reasonably safe condition to enable plaintiff to board the train at the time he did board it, then defendant could not be held liable for the condition of the steps during the passage of the train from said station to the station where he attempted to alight, should be refused; where (a) there is positive evidence that the train stopped at different stations between the one at which he boarded it and the one at which he attempted to dismount and that at the latter station there was on the steps a dangerous accumulation of ice and snow, which might have accumulated between the stations; and (b) because the instruction leaves out of consideration the fact that it is possibly safer to board a car than to alight from it, and (c) because it leaves out of account a requirement on the part of the trainmen to exercise care for the safety of the plaintiff after he was received as a passenger.

5. ——: **Tracked upon Steps by Other Passengers: Instruction.** In such a case, an instruction which tells the jury that it was not

Taylor v. Mo. Pac. Railroad Co.

the duty of defendant's employees to clean and remove ice and snow from the steps which might have accumulated during the passage of the train from the station where the passenger boarded it to its destination, and that if it did so accumulate during that time and in consequence of passengers getting on and off at intervening stations the plaintiff slipped and fell on account of it in attempting to alight, he could not recover, should be refused, where there is positive evidence that the trainmen knew of the dangerous condition of the steps, since it permits the jury to ignore such knowledge.

6. **Care Due Passenger: Alighting from Car.** The carrier is required to exercise the highest degree of care due a passenger while the passenger is descending the steps of a stationary car. The degree of care is the same whether the car is stationary or in motion.

7. ———: ———: **Allegation of Ordinary Care: Broadening the Issue by Instruction.** Allegations that the defendant was a common carrier, that plaintiff became a passenger upon its train, that defendant negligently and carelessly failed to keep ice and snow from the steps of the car, and that in consequence in attempting to descend said steps plaintiff was injured, amount to a charge that defendant failed to exercise the highest degree of care due from a carrier to a passenger; and an instruction requiring the jury to find that defendant was in the exercise of the highest degree of care does not broaden the issue, although the petition further states that the defendant's employees, by the exercise of ordinary care, could have discovered the dangerous condition in time to have removed it. The allegation that the injury could have been averted by ordinary care does not modify the basis of the cause of action stated in the other allegations, and in the absence of a motion to make more definite and specific, defendant cannot be heard to complain that the instruction broadened the issue.

8. **CONTRIBUTORY NEGLIGENCE: Glaring Danger: Instruction.** An instruction for defendant telling the jury that if plaintiff was negligent and his negligence directly contributed to his injury he could not recover, and an instruction for plaintiff requiring the jury to find that he was exercising ordinary care and caution, having been given, it was not error to refuse another instruction requested by defendant and telling the jury that if by the accumulation of ice and snow the steps of the car were so dangerous that an ordinarily prudent person would not have attempted to pass over them in alighting from the car, and that if the plaintiff knew, or by the exercise of ordinary care could have known, of their dangerous condition, and nevertheless attempted to pass over them, he was guilty of contributory negligence and could not recover, where defendant has failed to point out any evidence showing that

the steps were so glaringly and obviously dangerous that a person of ordinary prudence would not have attempted to pass over them, or that plaintiff knew, or by the exercise of ordinary care could have known, that they were so dangerous.

9. **EXCESSIVE VERDICT:** Passion and Prejudice: Reversal. In the absence of an independent showing of passion and prejudice on the part of the jury, a judgment will not be reversed on account of an excessive verdict, but the situation will be met by requiring that the excess be remitted.

10. ———: Fifty Thousand Dollars: Pecuniary Loss. Plaintiff, a passenger on a railroad train, in attempting to alight slipped and fell down the car steps, upon which ice and snow had negligently been permitted to accumulate. He alleged his damages for the personal injuries was two hundred thousand dollars. A verdict for $50,000 on a former trial was set aside as excessive, and on a second trial another verdict for the same amount was returned, and from a judgment entered thereon this appeal is prosecuted by defendant. *Held*, that, while ordinarily no sum of money will compensate an active, energetic, independent man for the injury which incapacitates him from pursuing his vocation and enjoying the ordinary activities of a healthy man, and it is impossible to fix a fitting compensation for such losses, the amount must be limited to such a reasonable sum as will compensate him for pecuniary loss and in some degree for the suffering endured; and considering all the facts in this case, where plaintiff spent three thousand dollars in trying to get well, the injury was to his spine and he now has no feeling in his legs but they are not atrophied, his injuries are probably permanent but his mind is not impaired, and his ability to transact his former business and his earning capacity have been greatly impaired, the judgment is affirmed for $25,000, upon condition that he remit the balance.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 3136, p. 1138, n. 63. Carriers, 10 C. J., Section 1348, p. 924, n. 14; Section 1354, p. 933, n. 82; Section 1464, p. 1074, n. 25; Section 1474, p. 1083, n. 71; Section 1475, p. 1088, n. 91; Section 1524, p. 1161, n. 2. Corporations, 14a C. J., Section 2902, p. 801, n. 15. Damages, 17 C. J., Section 451, p. 1115, n. 99, 1. Process, 32 Cyc., p. 532, n. 84.

Appeal from Cape Girardeau Circuit Court.—*Hon. Frank Kelly*, Judge.

AFFIRMED (*upon condition*).

*James F. Green* and *W. C. Russell* for appellant.

(1) The undisputed testimony shows that the employees of the defendant, after they received the car from the Cairo branch of the company at Charleston, and before they put it into service as a passenger car, thoroughly cleaned the steps and removed whatever accumulation of snow and ice there was on the steps. This was all the law required of them. Vancleve v. Railroad, 107 Mo. App. 103; 2 White, on Per. Inj., sec. 681; Tevis v. Railway, 185 S. W. 738; Bate v. Harvey, 195 S. W. 572; Proud v. Railway, 50 L. R. A. 468; Palmer v. Railroad Co., 2 L. R. A. 252; Unger v. Railroad, 51 N. Y. 497; Fearn v. Ferry Co., 143 Pa. 122; Neslie v. Railroad, 113 Pa. 300; Williams v. Railroad, 231 S. W. 955; Craig v. Railroad, 158 S. W. 393. (2) The defendant's answer contained a plea to the jurisdiction of the court and a defense to the merits, and it was reversible error for the court to exclude the testimony offered by the defendant for the purpose of showing that the court had never lawfully acquired jurisdiction of the defendant. Little v. Herrington, 71 Mo. 390; Coones Comm. Co. v. Block, 130 Mo. 668; Johnson v. Detrick, 152 Mo. 253; Meyer v. Ins. Co., 184 Mo. 486; Little Rock Trust Co. v. Ry. Co., 195 Mo. 682; Thomasson v. Ins. Co., 217 Mo. 492; Implement Co. v. Hardware Co., 137 Mo. App. 308. (3) The original petition, the summons and the sheriff's return all named the Missouri Pacific Railway Company as the defendant sued, summoned and served, and the court could not, by amendment, acquire jurisdiction over the Missouri Pacific Railroad Company, an entirely different corporation, although bearing a similar name. Jordan v. Railway Co., 105 Mo. App. 446; Hall v. School District, 36 Mo. App. 21; Davidson v. Payne, 289 Fed. 69; Zukowski v. Armour, 107 Ill. App. 663; Milk Pan Assn. v. Rem. Ag. Wks., 89 N. Y. 22; Hajek v. Benev. Society, 66 Mo. App. 568; Thompson v. Allen, 86 Mo. 85; Blair v. Hall, 201 S. W. 946; Anderson v. Doran, 211 S. W. 80; Roberts v. Assurance Co., 212 S. W. 390. (4) Plaintiff's Instruction A required more of the de-

fendant than the law requires, and it was error to give it. There can be no distinction as to the degree of care required of the defendant in regard to the steps of a passenger coach standing dead still and the steps of a railroad station. The rule of law is, or should be, the same as to both. Joyce v. Railroad, 219 Mo. 372; Elliott on Railroads (2 Ed.) sec. 1590; Williams v. Terminal Co., 231 S. W. 954; Vancleve v. Railway, 107 Mo. App. 103. (5) Plaintiff's Instruction A is further erroneous because it does not conform to the issues presented by the pleadings. Plaintiff's petition based his right to recover only upon defendant's failure to use ordinary care, while instruction numbered A required defendant to use the "highest practical care." Even though the law required defendant to use the highest degree of care, still when plaintiff, in his petition, sought to recover only because of defendant's failure to exercise ordinary care, he is bound by the issue as presented by his petition and cannot recover for a breach of a higher duty, even though same be owing by defendant. Roscoe v. Street Ry. Co., 202 Mo. 588; Beave v. Transit Co., 212 Mo. 351; Black v. Street Ry. Co., 217 Mo. 685; Hufft v. Railroad, 222 Mo. 303; State ex rel. Central Coal Co. v. Ellison, 195 S. W. 724; Bergfeld v. Rys. Co., 227 S. W. 108; McKenzie v. Randolph, 238 S. W. 829. (6) Defendant's Instruction 5 properly declared the law and should have been given. If the steps were in the condition as described by plaintiff when he alighted from the train, they were in such condition that no sane man would have attempted to pass over them. If they were in this condition, he knew it when he boarded the train at Lutesville, because he says they were in the same condition at both points. Kiefer v. St. Joseph, 243 S. W. 108; Beauvais v. St. Louis, 169 Mo. 500; Graney v. St. Louis, 141 Mo. 180; Chilton v. St. Joseph, 143 Mo. 202; Flynn v. Noesho, 114 Mo. 568; Devlin v. St. Louis, 252 Mo. 243; Davis v. Olson, 298 Fed. 923. (7) The verdict in this cause is manifestly excessive, and so excessive as to justify the

court in holding that it was the result of passion or prejudice on the part of the jury. Godfrey v. Railroad, 299 Mo. 372; Mil-West Bank v. Davis, 288 Mo. 563; Gill v. Railroad, 302 Mo. 318; Payne v. Davis, 298 Mo. 645; Myers v. Railroad, 296 Mo. 239; Mount v. Coal Co., 294 Mo. 603; Page v. Davis, 293 Mo. 600; Chapman v. Railroad, 233 S. W. 181; Smith v. Railroad, 279 Mo. 173; Turnbow v. Railroad, 277 Mo. 644; Meeker v. Elec. Co., 279 Mo. 574.

*Spradling & Dalton, Homer F. Williams* and *Charles G. Revelle* for respondent.

(1) A carrier of passengers is liable for injuries caused, not only by its failure to remove dangerous accumulations of ice and snow from the steps of its trains before its trains start *en route,* but is equally liable for injuries caused by its failure to remove dangerous ice and snow which accumulates while the train is *en route* if such accumulations assume an obviously dangerous form and its employees know thereof, or by the exercise of due care and diligence could and would know thereof, and if, in the exercise of due care and diligence, they have reasonable opportunity to remove the same and fail to so do. 4 R. C. L. sec. 630, p. 1207; 10 C. J. p. 920, sec. 1344; Craig v. Railway Co., 175 Mo. App. 616; Proud v. Railroad, 50 L. R. A. 468; Murphy v. Railroad, 81 N. J. L. 706; 2 White on Per. Inj. on Railroads, 681; Railroad v. Keegan, 210 Ill. 150, 112 Ill. App. 28; Speck v. Railroad, 133 App. Div. (N. Y.) 802; Railroad v. Smith, 59 Ill. App. 242; Rosen v. Boston, 187 Mass. 245; Railway Co. v. Gresham, 140 S. W. 483; Sutton v. Railway, 230 Pa. 523; Railroad v. Cockerell, 17 Ky. L. Rep. 1037; Neslie v. Railroad, 113 Pa. St. 300; McGuire v. Transit Co., 104 App. Div. (N. Y.) 105 Jones v. Ry. Co., 178 Mo. 528; Palmer v. Railroad, 2 L. R. A. 252; Fearn v. Ferry Co., 143 Pa. 122; Willmott v. Railroad, 106 Mo. 535. (2) It is a question for the jury to determine whether a railroad company has been guilty

of want of due care in failing to keep the steps to
its coaches clear of ice and snow. Railroad v. Keegan, 112
Ill. App. 28; Murphy v. Railroad, 81 N. J. L. 706; Gilman
v. Railroad, 168 Mass. 454; Speck v. Railroad, 133 App.
Div. (N. Y.) 802; Railway v. Gresham, 140 S. W. 483;
Railroad v. Cockerell, 17 Ky. L. Rep. 1037; Neslie v.
Railroad, 113 Pa. St. 300; McGuire v. Transit Co., 104
App. Div. (N. Y.) 105; Craig v. Railroad, 175 Mo. App.
616. (3) The evidence thoroughly warranted the jury
in finding, in the instant case, that the ice and snow which
caused plaintiff to slip and fall had been deposited on
the step before the train started *en route*. Craig v.
Railway, 175 Mo. 625; Gilman v. Railroad, 168 Mass.
454; Simon v. Railroad, 161 Ill. App. 502. (4) Numerous
witnesses testified that the steps were covered with
ice at Oran, Allenville and Lutesville, long prior to the
time the train arrived at Marquand, where plaintiff was
injured, and that at the latter point the steps were like-
wise covered with ice. (5) Instruction A is entirely
within the scope of the petition and does not broaden the
issues, nor place upon the defendant any higher degree
of care and diligence than both the petition and the law
declare. The criticism is highly technical, and, even if
justified, would not warrant a reversal, with the undis-
puted facts conclusively showing a case of gross negli-
gence. Magrane v. Ry. Co., 183 Mo. 119; Bishoff v. Ry.
Co., 121 Mo. 226; Barklay v. Assn., 153 Mo. 300; Peter-
son v. Transit Co., 199 Mo. 321. The court gave, at the
instance of the defendant, an instruction to the effect
that the defendant was not an insurer of the safety of
the plaintiff and was not liable for the ordinary hazards
incident to his getting on and off the car, and the mere
fact that he slipped and fell was no evidence that the
defendant was guilty of negligence. The court also by
another instruction told the jury that before the defend-
ant could be held liable its negligence must be the sole
and proximate cause of the injury. Even if Instruction
A could be said to be erroneous, the other instructions
removed any danger of prejudice. Smith v. Railway Co.,

108 Mo. 243. Under the disclosures of this record it would be impossible to find, where the feature of the instruction criticised, could have resulted in prejudice to any of the defendant's substantial rights, and under such circumstances the judgment will not be reversed, even though the instruction were erroneous. Secs. 1513, 1276, 1550, R. S. 1919; Barklay v. Assn., 153 Mo. 300; King v. King, 155 Mo. 425; Jones v. Ry., 178 Mo. 528; Peterson v. Transit Co., 199 Mo. 321. (6) Upon discovering that the petition writ and sheriff's return contained a mistake in the name of the defendant, the plaintiff filed due and formal motions praying leave to amend the same, so as to make them conform to the facts. The record affirmatively shows that the amendments were not only proper and warranted, but that a refusal on the part of the court to have allowed them would have been an abuse. Secs. 1274, 1550, 1551, R. S. 1919; Green v. Assn., 79 Mo. App. 179; Parry v. Woodson, 33 Mo. 347; Jordan v. Ry. Co., 105 Mo. App. 446; Carr v. Moss, 87 Mo. 447; Jacobs v. Ry. Co., 204 S. W. 954; Wright v. Groom, 246 Mo. 158; Corrigan v. Brady, 38 Mo. App. 649; Lottman v. Barnett, 62 Mo. 159. (7) Under the peculiar and shocking facts of this case, and the measure of damage prescribed by law, the verdict herein is not excessive. Cook v. Globe Printing Co., 227 Mo. 471; Varlay v. Taxicab Co., 240 S. W. 228.

WHITE, J.—The appeal is from a judgment in favor of the plaintiff rendered September 29, 1922, in the Circuit Court of Cape Girardeau County, for $50,000, for personal injuries.

On February 20, 1921, the plaintiff, at the town of Lutesville in Bollinger County, took passage on one of the defendant's trains for the purpose of going to Marquand. When the train stopped at Marquand the plaintiff in attempting to alight from the car slipped upon the steps and fell, incurring severe injury for which he sued. The train came north through Charleston, in Mississippi County; it had snowed the day before. Plain-

tiff introduced evidence to show that at different points on the road, particularly at Lutesville, Marquand and stations between, the steps were covered with a thick coating of ice and snow.

The defendant introduced evidence tending to show that the car in which plaintiff rode was a vestibule car, so constructed that the steps were protected and snow could not fall upon them; that any snow which was upon the steps on that day was carried there on the feet of the passengers entering the train; that at Charleston the steps were thoroughly cleaned, and at other places on the road wherever necessary.

On a former trial of the cause a verdict was returned and judgment rendered in favor of the plaintiff for $50,000, which the trial judge set aside on the ground that the verdict was excessive. The facts in relation to the alleged negligence of the defendant and the extent of plaintiff's injuries will be considered in determining the law affecting those facts.

The petition originally was filed June 2, 1921, in Bollinger County, and entitled: J. A. Taylor v. Missouri Pacific Railway Company. The summons was issued to the Missouri Pacific Railway Company, and the sheriff's return showed service June 3, 1921, by delivering a copy of the writ and petition to "P. R. Bailey, Station Agent at Lutesville, in said county, of said defendant corporation he being then and there in said defendant's usual business office and in charge thereof, the president or other chief officer of said Missouri Pacific Railway Company not having been found in the County of Bollinger."

On September 12 1921, the defendant named in the petition, the Missouri Pacific Railway Company, filed an application for a change of venue from Bollinger County. On the same day that defendant, appearing only for the purpose, filed a plea in abatement, alleging that the court was without jurisdiction of the defendant. In that plea it was alleged that all the property of the Missouri Pacific Railway Company had been sold by decree of the

Federal court, and that company had not, since March 19, 1917, owned, controlled nor operated any railroad in the State of Missouri, and on the third day of June, 1921, had no agent in Bollinger County, Missouri, nor for four years prior to said date had maintained or operated any railroad through Bollinger County.

Change of venue was awarded to Cape Girardeau County. In the Cape Girardeau court, January 6, 1922, the plaintiff filed a motion asking leave to amend his petition, and the summons correcting a clerical error in the name of the defendant, changing it from the Missouri Pacific *Railway* Company to the Missouri Pacific *Railroad* Company. It was alleged in the motion that the Missouri Pacific Railroad Company was in truth the corporation sued and intended to be sued by the plaintiff, and it was actually served with process. That the Missouri Pacific Railroad Company was the corporation operating the trains mentioned in plaintiff's petition; that neither at the time the plaintiff was injured nor at the time the suit was filed nor when the original writ was issued and served was there any corporation by the name of Missouri Pacific Railway Company operating a railroad or trains, or maintaining officers in Bollinger County or in the State of Missouri; that the Missouri Pacific Railroad Company was the successor of the Missouri Pacific Railway Company had acquired its assets and assumed all its liabilities, and at the time the plaintiff was injured was operating the trains which prior thereto had been operated by the Railway Company. The abstract of respondent recites that the court took evidence offered by the plaintiff in support of the motion. No objection appears to that recital. The plaintiff also filed a motion asking leave to have the sheriff amend his return. The court sustained the motions, and allowed the plaintiff to amend his petition and the summons by the substitution of the word "Railroad" instead of "Railway" as it appeared in the name of the defendant. The sheriff also by leave amended his return so as to show, as in the original return, that the service was had on P.

R. Bailey, station agent at Lutesville, of the Missouri Pacific *Railroad* Company. The appellant, the Railroad Company, then filed a motion to strike out its name as it appeared by amendment in the petition and summons and also a motion to quash the sheriff's return showing service upon it. These motions were overruled.

I. Appellant claims that this is a case where suit was brought against one party, service had upon that party, and the plaintiff permitted to substitute another party against whom no cause of action was alleged in the original petition; that this amounts to the substitution of one cause of action for another.

Section 1274, Revised Statutes 1919, provides that the court at any time before final judgment in furtherance of justice may amend any record, pleading, process, entry, return or other proceedings by adding or striking out the name of any party or by correcting a mistake in the name of a party. In case of Green v. Supreme Lodge, 79 Mo. App. 179, it was held, quoting from an earlier case, that service upon a defendant by the wrong name did not invalidate the judgment. In State ex rel. Fabrico v. Trimble, 309 Mo. 415, decided at the present term, Court in Banc, in opinion written by GRAVES, J., held that where the petition summons and sheriff's return mentioned a defendant, who was actually served, by a name not his real name, judgment against him by default was good.

In the principal case cited by appellant, Jordan v. Railroad, 105 Mo. App. l. c. 455, the Court of Appeals said:

"If the railway company was the corporation in truth and in fact sued and the summons was actually served upon its agent, in such event upon due proof of those facts, the action of the lower court might have been justified (in amending as to the name); but the court was not warranted in assuming the truth or existence of the averments of plaintiff's motion to amend without proper proof and erred in sustaining it without hearing testimony."

In this case the very facts which were wanting in the Jordan case were supplied.

In his motion to amend the plaintiff alleged that the company sued was the Missouri Pacific *Railroad* Company, that process was actually served upon the Missouri Pacific Railroad Company, copies of the writ and petition were delivered to the agent by the Railroad Company and by him delivered to attorneys for the *Railroad* Company, who appeared for defendant in the Circuit Court of Bollinger County.

The appellant in its plea to the jurisdiction alleges that the Missouri Pacific *Railway* Company, since 1917, had not owned or operated or maintained any station and had no agents in Bollinger and Madison counties, Missouri, or in the State of Missouri. This is an admission that no process was served or could have been served on the "Railway" Company. It is not disputed that service was actually had upon the agent of the "Railroad" Company, as the amended return stated.

Evidence taken upon this motion to amend does not appear in the abstract of the record, although it is stated by respondent that it is incorporated in the bill of exceptions. From the order of the court allowing the amendments we must assume that the evidence supported the allegations of the motion. The allegations of plaintiff's motion are sufficient to permit evidence that the "Railway" Company had ceased to be a going concern, and existed, if at all, in name only.

II. Appellant assigns error to the refusal of the trial court to sustain a demurrer to the evidence. Appellant's position is this: if snow was on the steps and was the occasion of the plaintiff's fall, such

**Demurrer: Snow and Ice on Steps.** snow had not fallen there but was carried there by passengers getting on the train; the steps were cleaned from time to time during the day before the injury occurred; the defendant

discharged its full duty in that respect and was not bound to keep up a continuous inspection of the steps.

Under the instructions the plaintiff was allowed to recover whether the snow and ice which was said to be on the steps had fallen there the day before or had been tracked on by the passengers.

While the defendant was not under obligation to keep up continuous inspection of the steps, it was bound to exercise the care required of a carrier to provide for the safety of its passengers.

The law in respect to the matter is stated in 2 White on Personal Injuries on Railroads, sec. 681, p. 1035. After saying that it is impossible to lay down any general rule applicable to all circumstances respecting the care to be observed by a railroad company in the removal of ice or snow from its cars, the author adds: "But where the snow-and-ice on a platform has existed in a dangerous condition for a length of time sufficient to enable the carrier, by the exercise of due care, to remove it, if the accumulation is in sufficient quantity to be productive of danger to the passengers, the carrier will be held liable in case of injury to a passenger from such a cause."

It is the duty of the carrier, therefore, to inspect at intervals for the purpose of keeping his appliances in good repair. That applies to removing accumulations of snow and ice when they become dangerous and the danger is obvious or can be discovered by proper care. [4 R. C. L. p. 1204; 10 C. J. 920-921.]

So it is held that although snow may be tracked upon the steps of a car by passengers, the carrier may be liable for injury caused thereby if it is suffered to remain for an unreasonable length of time. [Sutton v. Railroad Co., 230 Pa. St. l. c. 527-528; Neslie & Wife v. Passenger Ry., 113 Pa. St. l. c. 304; I. C. R. R. Co. v. Keegan, 210 Ill. 150; Kingston v. Boston Elevated Ry. Co., 207 Mass. 457.]

In this case the evidence showed that at each station, especially where passengers alighted, the porter and the conductor went up and down the steps and

were bound to know their condition if they used their senses.

It was a three-car train—baggage car, combination mail-car-and-smoker, and one passenger coach. The smoker was next to the passenger car and it was on this car that the plaintiff was riding. It was a vestibuled car. Three steps led down from the platform, the outer edge of the lower step being on the line with the side of the car. When the train was in motion a trap door let down from above extended the platform out over these steps. It is claimed by appellant that snow could not fall on the steps on account of this cover. The conductor in charge of the train, however, testified on cross-examination that this trap door covered the steps only from above so as to protect them from perpendicular fall, but the steps themselves were not enclosed, and any blowing snow could accumulate on them notwithstanding the trap door. Heavy snow had fallen February 19th; it was said by some witnesses, six inches in depth. It was freezing weather that day. It appears from the evidence that the car during the following night was in the open at Poplar Bluff. The car was attached to the train and started from Charleston at 10 o'clock on the morning of the 20th. The distance from Charleston to Marquand where the plaintiff fell was approximately sixty miles. Conductor G. W. McCammon, in charge of the train, and the porter testified that there was slush and snow on the steps at Charleston, and the steps were cleaned off at that point and cleaned again at Morley, sixteen miles further on the route, and again at Delta, thirteen miles further, and again at Allenville, two and one-half miles from Delta, but were not cleaned any more before the train arrived at Marquand, where the plaintiff was injured. There were eleven stations between Charleston and Marquand. Allenville, about half way between, was the last station at which the steps were cleaned. The train arrived at Allenville at 11:10 A. M. The hour at which it arrived at Marquand is not stated, but the

train stopped there for noon dinner. The different stations, from Charleston to Marquand, inclusive, with the distances given, are as follows:

```
10:00 A. M.    1  ( Charleston      (Cleaned steps)
               6  ).
               M  (Deihlstadt
               i  )
               l  ( Blodgett
               e  )
               s  (Morley           (Cleaned steps)

               1  )
               3  ( Oran
               M  )
               i. ( Delta           (Cleaned  steps)

               2½ (
11:10 A. M.    Mi.) Allenville      (Cleaned steps)

               ,  (
               ,  ) Whitewater
               ,  (
               ,  ) Laflin
               2  (
               9  ) Lutesville
                  (
               M  ) Glen Allen
               i  (
               l  ) Bessville
               e  )
               s  ( Marquand         (Dinner)
```

By this it will be seen that according to defendant's evidence the steps were cleaned four times during the passage of 31½ miles from Charleston to Allenville; they were not cleaned again during the passage from Allenville to Marquand, a distance of 29 miles, there being five stations between those points at which passengers boarded the train. The conductor and

several other railroad employees testified that there was no snow of consequence upon the steps, but they were wet when the train arrived at Marquand. The evidence shows that the train was equipped with brooms and shovels for the purpose of removing ice and snow from the steps. The steps were covered with a corrugated rubber matting.

The plaintiff introduced ten or eleven witnesses, most of whom were passengers boarding or alighting at some of the stations from Lutesville, where the plaintiff boarded the train, to Marquand; all of them testified to the presence of ice and snow upon the steps. According to them, ice and snow were upon the steps at Lutesville. One witness said it was half an inch thick. Another witness at Lutesville said at the edge of the step the ice-and-snow was half an inch thick and slanted upward towards the back of the step, where it was an inch and a half thick or more; that this was on the steps of both the smoking car and the passenger car. Another witness testified that there appeared to be more ice on the steps than there was on the ground; that there was snow on the ground at Lutesville and ice on the steps. Several witnesses estimated the ice on the two lower steps as being half an inch thick; said it looked like frozen snow and ice, or frozen slush, and that the condition was the same at Marquand as it was at Lutesville.

After leaving Allenville, the last place where defendant claims the steps were cleaned, passengers were received at Whitewater, Laflin, Lutesville, Glen Allen and Bessville. At some of those stations were towns of several hundred inhabitants. The evidence was not clear that passengers boarded the train at all of those stations, but the train stopped at all of them. The conductor, the porter, and possibly the brakeman, got off the train—walked up and down those steps—at each station. From this testimony the jury could very properly infer that this frozen slush must have been on the steps before the train started, because it was snow-

ing, and according to some witnesses, sleeting the day before; it was freezing weather. The jury had evidence from which they might believe that, if the steps were cleaned as testified to by the train employees, they were not properly cleaned; and the frozen slush was not cleaned off.

In support of its position appellant cites Vancleve v. Railroad, 107 Mo. App. 96, where a judgment for the plaintiff was reversed and remanded, and the court held at page 103, "that if the slippery substance [in that case mud] was deposited on the steps while the train was *en route* by agencies other than those of the company, it was not negligence to fail to remove such substance, because the company was not bound to keep up a continuous inspection." The opinion in that case cites several cases where a slippery condition of the steps was caused by other things than snow and ice. In that case the court says, at page 100: "There is no evidence showing or tending to show that any of appellant's servants in charge of the train knew or had notice that the steps were muddy and slippery."

It may be noted here that mud, banana peelings, and things of that kind, are hardly in the same class with snow and ice. Such things get upon the step and the ordinary observation of employees would not notice them, but where snow is continually tracked upon the steps by incoming passengers so as to create the condition described by plaintiff's witnesses, and where the employees themselves were continually using those steps, a knowledge of the condition was much more likely to be brought to them.

The case of Williams v. K. C. Terminal Railway, 231 S. W. 954, is cited. That was where a passenger slipped on a stairway at the station and was injured. This court, in holding the defendant not liable said this, at page 956: "There was no direct evidence as to what caused the step to be wet, or as to whether defendants had any knowledge of such condition prior to plaintiff's fall."

The case of Craig v. United Railways Company, 175 Mo. App. 616, is cited. That was a case where the plaintiff slipped on mud accumulated on the steps of a street car. The court called attention (l. c. 624) to the statement of the conductor that he had removed the slush and ice before the car left its starting point; that the slush which caused the slippery condition was brought on the shoes of the passengers, and said, at page 625: "If it conclusively appeared . . . that the slippery substance on the step of the car was deposited there by the passengers passing out, as suggested in the argument, that those in charge of the car were not aware of it and that none of it was present before the car started from Wellston, it may be that no liability should be declared against the defendant for its omission to stop the car and remove it *en route*." Applying that conclusion to the facts in this case, if the accumulations which caused the slippery condition were carried on by the feet of the passengers, and it conclusively appeared that those in charge of the train were not aware of it, then there might be no liability for failure to clean the steps when the train did stop at the different stations.

Further, on the same page, the Court of Appeals said: "The obligation of high care is to be considered in connection with the circumstances of the case, and, as prudent persons, those in charge of the car are deemed in law as anticipating serious results from such freezing weather when such deposit is known to be on the steps."

Bates v. Harvey, 195 S. W. 571, opinion by the Kansas City Court of Appeals, is cited. The court in that case said, at page 572: "As prudent persons, those in charge of the car were required to anticipate people falling just as plaintiff fell, when there is freezing weather, and when deposits of snow and ice are known to be, or are likely to be, upon the steps."

Here we have positive evidence that at Lutesville, Marquand, and other stations, after the train left Allenville, ice, snow and frozen slush were upon the steps in such quantity as to make it dangerous; that the frozen

Taylor v. Mo. Pac. Railroad Co.

slush or ice sloped from the inside of the step to the outside. The appellant's employees knew the ice and snow were accumlated on the steps, on their own testimony, if none was on there when the train started, for they cleaned the steps four times in the space of about thirty-one miles. They did keep up an inspection sufficient to know *when* snow and ice accumulated on the steps. If snow and ice were on the steps after the train left Allenville and remained on there until Marquand was reached, as testified to by a number of witnesses, in such quantities as the evidence tends to show, the defendant's employees were bound to know it was there. If they did not actually know it they failed to use even ordinary care. If between Allenville and Marquand they had exercised the same care which they admitted they felt obliged to exercise between Charleston and Allenville, they would have known the dangerous condition of the step at the later stations. So we think a case was made out which authorized the jury to find for the plaintiff, if they believed the condition was such as described by the plaintiff's witnesses; whether they believed the condition was caused by the falling snow of the day before or by the accumulations of snow upon the steps carried by the feet of the passengers in boarding the train.

III. The defendant offered instructions numbered 8 and 9 upon the point just discussed, which it is claimed were erroneously refused. Instruction 8 told the jury that if they found the steps were in reasonably safe condition to enable the plaintiff to board the train at the time he did so at Lutesville, then the defendant could not be held liable for the condition of the steps during the passage from Lutesville to Marquand.

This instruction leaves out of consideration the positive evidence that the train stopped at different stations between Lutesville and Marquand, and the condition of the steps, testified to by the witness at Marquand; it leaves out of consideration that the steps at

Safe
Boarding.

Lutesville might have received accumulations of snow from passengers boarding the train there after the plaintiff got on. It might have been perfectly safe for him to board the car at Lutesville, and entirely unsafe for him to alight at Marquand, and possibly safer in boarding the car than in alighting. The conductor could not say how many got on at Lutesville, it being the nearest station to Marble Hill, the county seat, where people boarded the train going to and from Marble Hill. The conductor also could not tell how many got on at Glenn Allen or Bessville. The instruction also leaves out of account the requirement of any kind of care on the part of employees after the train left Lutesville.

Instruction 9 tells the jury that it was not the duty of the employees of the defendant to clean or remove ice from the steps which might accumulate during the passage from Lutesville to Marquand, and if the jury found that it did so accumulate during that

Tracking
Snow Upon
Steps.

time and in consequence of the passengers getting on or off the car and the plaintiff slipped and fell on account of it, the plaintiff could not recover. That instruction leaves out of account any knowledge which the employees might have of a dangerous condition. It might have been ever so dangerous and the employees might have known all about it, and still the plaintiff could not recover in such case. Both instructions were properly refused.

IV. Appellant presents objections to Instruction A, the principal instruction given for the plaintiff. First, that it required of defendant the highest degree of care due a passenger while the plaintiff was descending from the stationary car. This objection is on the

Care Due
Passenger.

theory that while the car was standing still the carrier owed the passenger alighting therefrom no more than ordinary care. Several cases are cited where passengers in departing from stations were injured by dangerous condition of

the steps or way, and it was held that the carrier owed the passenger in such case only ordinary care to keep such way or space in reasonably safe condition. The rule is that the relation of carrier and passenger, requiring the highest degree of care, continues until the passenger has alighted from the vehicle, and it obtains with respect to the steps provided for the passengers' exit from the vehicle. [Craig v. Railway, 175 Mo. App. l. c. 623.] No case is cited where a distinction is made between a stationary car and one in motion. A passenger is not required to alight until the train stops and the high care continues after it is stopped until he has alighted in safety.

Another objection urged against Instruction A is that it broadens the issues. It is claimed that the petition is predicated upon the exercise of ordinary care upon the part of the defendant, and Instruction A requires the highest degree of care, and thereby

**Broadening Issues.** broadens the issues. Cases are cited where this court has held that, although the evidence shows a ground of recovery not pleaded, an instruction authorizing recovery on such ground is erroneous because the instruction must limit the scope of recovery to the allegations of the petition. Such cases are not in point. This objection arises from the allegation in the petition that the employees of the company of the defendant, by the exercise of ordinary care, could have discovered the dangerous condition of the steps in time to have removed the same. From this the appellant concludes the defendant, by the petition, could be held to only ordinary care. There is no allegation in the petition of failure to use ordinary care and a prayer for recovery for that reason. The petition states the facts, that the defendant was a carrier that plaintiff became a passenger and that the defendant negligently and carelessly failed to keep ice and snow from the steps, thereby causing plaintiff's injury. This is a statement of a failure on the part of the defendant to do what the highest degree of care required it to do. There was no motion to make

311 Mo. Sup.—40.

more specific the allegation that the defendant negligently failed to keep the ice and snow off the steps, and we may assume that "negligently" in that case means a failure to perform the duty which the law imposes upon a carrier.

The facts pleaded in the petition showed a duty on the part of the defendant as a carrier to exercise the highest degree of care to prevent injury to the plaintiff, and the failure of the defendant to perform that duty. That stated the case against the defendant and authorized an instruction by which the jury might render a verdict for the plaintiff on such failure. The fact that the petition further alleged that the injury could have been averted by ordinary care does not modify the basis of the cause of action as a failure to exercise the highest care.

V. Defendant asked Instruction 5, to the effect that if by reason of the accumulation of snow and ice the steps of the car were so dangerous for use that an ordinarily prudent person under Contributory like circumstances would not have attempt-Negligence: ed to pass over them, and the plaintiff knew, Glaring Danger. or by the exercise of ordinary care could have known, of their dangerous condition, and then attempted to pass over them he was guilty of contributory negligence and could not recover. The court refused the instruction and the appellant assigns error to the ruling. The appellant fails to point out any evidence which shows that the steps were so glaringly and obviously dangerous that a person of ordinary prudence would not have attempted to pass over them, or that the plaintiff knew or by the exercise of ordinary care could have known that they were so dangerous. There is no evidence upon which to base that instruction. Instruction 10, asked by defendant, told the jury that if the plaintiff was negligent and his negligence directly contributed to his injury he could not recover. An instruction for plaintiff, authorizing recovery, required a finding that the

plaintiff was exercising ordinary care and caution. We think these instructions are sufficient to cover any want of care on the part of the plaintiff which might be inferred from the evidence.

Authorities cited by appellant do not support its position on this point.

VI. Appellant claims that the verdict of $50,000 was so excessive as to show passion and prejudice, and demands a reversal of the case on that ground alone. In the absence of any independent showing of passion and prejudice this court has always refused to reverse a judgment on account of an excessive verdict, but has met the situation by requiring a *remittitur*.

**Excessive Verdict.**

The former verdict of $50,000 was set aside by the trial court as excessive, and a second verdict is now presented for the same amount. The plaintiff sued for $200,-000. Ordinarily no sum of money will compensate an active, energetic, independent man for the injury which incapacitates him from pursuing his vocation in life, and from enjoying the ordinary activities of a healthy man. It being impossible to fix a fitting compensation in that respect, this court has consistently limited the amount of recovery in such cases to a reasonable sum which will compensate a plaintiff for pecuniary loss and in some degree for the suffering endured. Each case stands more or less upon the facts developed in it.

After the plaintiff was injured he, with some assistance, got into the station; he was treated at his home for some time and by his physician sent to St. Louis in April following the injury, where he was put in plaster-of-paris casts and kept until June 27th, of that year. After that he was at home. He testified that he had incurred expense of about three thousand dollars for medical attention, nurses, hospital fees, etc. He was five feet eight inches in height; before his injury he weighed 214 pounds; he measured 42 inches around the waist. At the time of the trial he weighed 154. He complained that he

was unable to sleep. By several tests of physicians who examined him the evidence showed that he had no feeling in his lower limbs; experiments were made by thrusting needles into his legs, sufficient to draw blood, and there was no response showing that he felt the needles. At the same time he could move his right leg, and he could move his left leg to some extent. The physicians testified that his limbs were not atrophied. He was compelled to lie on a cot most of the time. The evidence was not clear as to whether he could walk with crutches. The injury was to his spine where his back struck upon the step when he fell. The injury is described by the physician as compression in the fifth lumbar vertebra. The expert witnesses explained at length the nerves of the vertebrae in that region and the effect of compression at that point. Some physicians testified that the plaintiff would never be better. The plaintiff himself testified that he suffered more or less pain, and that he could not walk or transact any business. His general health, aside from the local effects of the injury, seemed good. It was difficult for him to eat solid food and he lived mostly on milk, and tea and ice cream.

Plaintiff's counsel calls attention to the earning capacity of the plaintiff as an important element entering into the amount to which he is entitled. He said his earnings from his activities immediately preceding the injury, excluding income from investments, was $8500 a year. He was asked if he made an income tax return and was unable to say that he had for the year preceding his injury. He testified that he owned two or three saw mills at a time and had men operating them; that that was his principal business, that and trading. He bought and sold cattle and hogs and ties; he shipped five carloads of cattle and 126 cars of ties during the year 1920. The average number of ties per car was 405, and his profit was from 15 to 20 cents per tie. It may be noted that in stating how much he earned he said it was aside from his income from his investments. We interpret his investments to mean money he had invested in such manner as to

produce a regular income. He must have used considerable capital in buying and shipping cattle, and in buying and selling ties so that his personal efforts were not the only factor employed in earning $8500 a year, but it was the manner in which he handled his capital. The years immediately preceding his injury may have been unusually profitable in the trading in which he was engaged. At other times he may have lost money. He does not state any facts which would warrant a conclusion that his earning capacity was $8500 a year under usual circumstances.

There are some cases where injuries similar to this have occurred. For instance, Gordon v. Railroad, 222 Mo. 516, where a verdict was held to be excessive and a *remittitur* required so as to leave the judgment for $25,000.

In the case of Varley v. Columbia Taxicab Co., 240 S. W. 218, many cases are collated in which this court has reduced the verdicts by requiring *remittiturs*.

It may be noted in this case that the plaintiff suffered no mental impairment. With his mind as active as ever, there is no reason to believe that he cannot look after his investments and in a limited way employ his money to advantage. Of course, he was in the business of running saw mills, and shipping cattle and ties, which required more or less activity and moving around.

We believe, according to the principle usually acted upon by this court in such cases, that the verdict was excessive in the sum of $25,000. If, therefore, the plaintiff will within ten days remit $25,000 from his judgment, allowing the judgment to stand in the sum of $25,000, it will be affirmed; otherwise it will be reversed and remanded. *Walker, P. J.,* concurs; *Blair, J.,* concurs, but thinks *remittitur* should be $30,000.