DAISY E. JONES, RESPONDENT, v. J. M. KURN AND JOHN G. LONSDALE, TRUSTEES OF THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, APPELLANTS.—157 S. W. (2d) 797.

Springfield Court of Appeals, December 26, 1941.

Rehearing denied February 4, 1942.

658

*J. W. Jamison* and *Ward & Reeves* for appellants.

*M. G. Gresham* and *R. Kip Brincy* for respondent.

660

SMITH, J.—This is an action for damages for personal injuries allegedly received by plaintiff, as a result of negligence on the part of defendants. The suit was instituted in the Circuit Court of New Madrid County, April 18, 1938. Thereafter a change of venue was awarded to the Circuit Court of Stoddard County, where it was tried April 26, 1939, resulting in a verdict in favor of plaintiff for $1,000. Defendants duly appealed to this court and while the appeal was pending, counsel for plaintiff and defendant filed a written stipulation on this court agreeing that the cause be remanded to the Circuit Court of Stoddard County for a new trial, which was done. On January 8, 1941, the cause was again tried resulting in a verdict in favor of plaintiff for $1500, and from this verdict and judgment, this appeal has been perfected.

Plaintiff, in her petition, states among other things, that on September 19, 1937, she became a passenger on one of defendants' passenger trains from Lilbourn to Portageville, Missouri, and that

because of the defendants' failure to maintain a 'safe platform and safe steps from which the plaintiff was to alight and get from the train of the defendants', and by such carelessness, recklessness and negligence of the defendants, the plaintiff was caused to fall from the top of said steps to said steps and to the depot platform; the defendants carelessly and negligently left at the top of its steps and at the edge of its platform, a projecting piece of iron or steel which, 'tho' proceeding with due care for her own safety, she caught the heel of her shoe upon, tearing the said heel from her shoe and directly causing her to fall, as aforesaid; plaintiff further states that while plaintiff was falling down said steps, on said steps and upon the depot platform, the defendants carelessly and negligently failed to have anyone at said steps to catch her in her fall, as aforesaid, and as a result of which she was injured.

Neither demurrer to the petition, nor motion to make more definite and certain, was filed. The answer of defendants admitted they were Trustees of the St. Louis San Francisco Railway Company, but denied generally each and every other allegation in the plaintiff's petition. The answer further pleaded contributory negligence on the part of the plaintiff.

The evidence relating to the issues involved is in substance as follows: Plaintiff testified, "I got on the train at Lilbourn, paid my fare on the train and went to Portageville, where I got off. When the train stopped I walked out of the coach on the platform, and on the right hand side, as I made the step to get off, there was something caught my heel, a piece of iron that looked like an iron pin, about a quarter of an inch, which caught my right heel and tore it off and throwed me back on my arms and back." Plaintiff stated, on cross-examination, that when she got on the train at Lilbourn she went up the same steps, over the same platform and into the same aisle-way from which she later got off; that she did not see anything on the steps; wasn't looking for 'nothing' to get hurt on; didn't see anything wrong. The train made two stops before she got to Portageville, at Marston and Conran, but didn't notice anyone getting off at either place. That the piece she fell over looked like an iron piece. "I couldn't tell you just exactly where it was located, only I know when I started to step off on the right hand side the piece of iron was right along there where I started to step off and it caught my heel, and on falling my other one came off. . . . This iron bolt or bar was about a quarter of an inch high. It looked like an iron pin to me and about the same size as the top of this fountain pen cap. It kinda looked like it had an iron head, something similar to a screw, but I don't know whether it was a screw or a bar. I suppose this iron bar was stationary in this platform; it was still there after I got up and looked at it. It was sticking up high enough to catch my heel, but I don't know whether it was sticking up out of a hole or how it was fastened."

Mrs. Addie Bell, mother of plaintiff stated that she was waiting for her daughter at the train, saw her fall on the platform and saw her as she fell; that the porter reached up to get her shoe heel and she saw a screw sticking up close to the heel. On cross-examination she stated she was on the train about a week later, looked at the platform and there was a defect there like a screw or something. It looked like where it could be screwed down and it had worked up a little and that could have caused her fall; that at the time she went on the train she did not see it sticking up, but saw where there could be a defect— a screw or something that caught her heel. "It was all right when I examined it a week later, but I saw it when she got hurt."

Defendants offered an abundance of testimony to the effect that there was no defect whatever in the platform or the steps; no loose screws or bolts and that it was impossible for the screws in the platform to work loose since they were cemented in with lead cement and had to be drilled out when the steel platform was to be removed for any purpose; that the car was turned out July 30, 1937, after it had been given general repairs and the vestibule, steps and platform inspected and found to be in perfect shape.

Defendants assign as error, (1) the action of the court in overruling their instructions in the nature of demurrers to the evidence offered at the close of plaintiff's case and again at the close of the whole case; (2) the refusal of defendants' Instruction number "C" which undertook to withdraw from the consideration of the jury the charge of negligence as to the defendants permitting a projecting piece of iron or steel to be left on the edge of the platform of the car; (3) the giving of plaintiff's Instruction Number 6-P.

In passing on the demurrers to the evidence, this court is required to take plaintiff's evidence as true, disregard such portion of defendants' evidence as is in conflict herewith, and give plaintiff the benefit of all reasonable inferences in her favor arising from all the evidence. [Jordan v. St. Louis Public Service Co., 103 S. W. (2d) 552.]

A review of the record convinces us that the trial court did not err in refusing the demurrers. Defendants base their contention that the demurrers should have been sustained on the ground that there is no evidence to show that the defendants knew or could have known, by the exercise of proper care of the defect in the platform of the car and cites, in support thereof, a number of cases, each of which has to do with a foreign substance or object upon the floor, platform or steps of a car, such as a banana peeling, tobacco quid or snow and ice. The cases cited do not deal with defects in conveyances or equipment, and consequently have no application here.

Defendants, by their demurrer, admit that the evidence shows that a screw was sticking up approximately a quarter of an inch above the surface of the steel platform of the car. In considering inferences, it is a reasonable inference that can be drawn from the

testimony that it would take some time for such a condition to develop, and because of that time, it was a question of fact for the jury as to whether the defendants knew or could have known of the condition.

"The rule is, that the relation of carrier and passenger requiring the highest degree of care, continues until the passenger has alighted from the vehicle and it obtains with respect to the steps provided for the passenger's exit from the vehicle." [Taylor v. Ry. Co., 311 Mo. 604, 279 S. W. 115, 1. c. 120.]

The case of Gardner v. Ry. Co., 223 Mo. 389, 1. c. 416, 417, 122 S. W. 1068, states:

"The pole, cross-beam and wire were all necessary parts of the equipment furnished and used in furnishing the motive power for the cars. And the law imposed the same degree of care upon respondent in providing and furnishing that equipment as it did in furnishing safe cars in which passengers were to ride.

"In discussing this question, this court in the case of Och v. Railroad, 130 Mo. 1. c. 51, said: 'While carriers of passengers are not insurers of their safety, and are not responsible when all reasonable care, skill and diligence, prudence and foresight have been employed, the law imposes upon them the utmost care and skill in selecting and furnishing safe means of transportation, and to that end to provide safe coaches and appliances, necessary for that purpose, including every part and parcel thereof, which very prudent men would exercise under like circumstances, and when the injury to the plaintiff was shown to have occasioned by the falling upon her head of a ventilating window from the coach in which she was riding, then it devolved upon the defendant to show by a preponderance of the evidence that the injury was caused by something not under its control, and not from any fault, want of care, or watchfulness upon its part. The same degree of care was required of defendant as to all parts and all kinds of its property used in the transportation of its passengers, as compared with its liability to cause injury to them. The same rule applies when the injury is caused by the want of diligence or care by those employed by the carrier. In Meier v. Railroad, 64 Pa. St. 225, it was said: *Prima facie,* where a passenger, being carried on a train, is injured without fault of his own, there is a legal presumption of negligence, casting upon the carrier the *onus* of disproving it. . . . This is the rule when the injury is caused by a defect in the road, cars, machinery or by a want of diligence or care in those employed, or by any other thing which the company can or ought to control as a part of its duty, to carry the passengers safely; but this rule of evidence is not conclusive.' [See also Clark v. Railroad, 127 Mo. 197; Dougherty v. Railroad, 81 Mo. 325.]

"The refusal of the court to give appellant's instruction which so declared the law was error."

The cause was tried upon the theory that the defect in the platform of defendants' car was the proximate cause of plaintiff's injury and not the result of any extraneous matter or foreign substance, object or thing upon the platform. The only evidence offered by defendants to indicate diligence, or the degree of care exercised by defendants with respect to the railway coach, on which plaintiff was injured, was to the effect that the car was turned out of the Frisco Shops at Springfield, Missouri, July 30, 1937, after it had been given general repairs and the vestibule, steps and platform inspected and found to be in perfect shape. That the car "wouldn't go bad in three months' time." This was about seven weeks prior to plaintiff's injury. What we have said not only disposed of defendants' first assignment of error, but the second as well.

Complaint is made of plaintiff's Instruction 6-P, which is as follows:

"The jury are instructed that if you find and believe from the evidence that plaintiff, Daisy E. Jones, was a passenger on defendants' passenger train mentioned in the evidence and had paid her fare, then the defendant owed to the plaintiff the duty to exercise the highest degree of care to avoid injuring the plaintiff, and the failure, if any, to do so, by the defendant is negligence; and if you further find from the greater weight of the testimony that the defendant, railway company, its agents or employees, carelessly and negligently left in its platform, a piece of steel or iron, projecting above the surface thereof, and that the defendants, agents, servants and employees, knew or by the exercise of a high degree of care, should have known, that said piece of steel or iron was projecting above said platform of said passenger coach, if you so find, and that as a direct and proximate result thereof, the plaintiff in going upon and attempting to use said platform, caught her heel on said projection, if any, and was thereby caused to fall and injure herself, then your verdict will be for the plaintiff, Daisy E. Jones, and against the defendants, in such sum as you may find she was damaged, if any, as set out in another instruction in this case."

One of the criticisms leveled against this instruction is based upon the fact that it did not require the jury to find that the defendants knew, or by the exercise of proper care could have known of the defect in the platform. In view of the pleadings and the facts proven, this position is not well founded.

Further complaint is made that the instruction was erroneous for the reason that it referred throughout to the defendant Railroad Company and employees, ignoring the fact that J. M. Kurn and John G. Lonsdale were the defendants in the case. This is harmless error. [Blankenship v. St. Louis Public Service Co., 71 S. W. (2d) 723.] Of course, the instruction properly should have referred to the defendants, but it is our opinion that no jury of laymen could have been misled by the instruction as written.

No cases have been cited, either by plaintiff or defendants, that are precisely in point or decisive of the issues raised, and, upon much research we have been unable to find any. However, the authorities we have cited, tend, in a way to indicate the correctness of the conclusions we have reached.

Finding no reversible error, the judgment is affirmed. *Blair, P. J.,* and *Fulbright, J.,* concur.