## VERNON A. CLIFTON v. KANSAS CITY SOUTH-ERN RAILWAY COMPANY, Appellant.

### Division One, February 28, 1911.

1. **EXCESSIVE VERDICT: $11,800: Impaired Arm.** Plaintiff, a railway mail clerk, earning $900 per annum, was twenty-five years of age, and by a collision between defendant's trains, was thrown against the mail-sack rack of the car, and his right arm caught in the sliding door, resulting in the fracture of the bones near the elbow. He was rendered unconscious for several hours, but bruises on the head and ear healed. He was treated by defendant's physician, and for eight months by an osteopath, but his salary went on, and he made no proof for money expended for medicines or medical attendance. In about eight months he resumed work for the Government, at the same wages, but at the depot in checking mail sacks, at which he did more or less writing, and worked eight hours a day. In two fingers of the right hand he has lost sensation, and the movement in the elbow is limited by reason of a bony growth. There is a deep indentation of the large muscle of the chest that runs over and supplies the right arm, and that muscle has been severed to a great extent, though not altogether, and the motions and uses of that arm are badly interfered with. He can raise only a few pounds with it, and the injury is permanent, and besides he is nervous when he sees something about to happen. *Held*, that a verdict for $11,800 is excessive by $5,800.

2. ————: ————: ————: **Remittitur.** Although the verdict is grossly excessive, yet if there was no error in the admission or rejection of testimony or in the instructions of the court, and no misconduct on the part of the jury is shown, the appellate court will require a *remittitur* as a condition of affirmance, and will not because of the excess order a new trial.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Special Judge.

AFFIRMED (*conditionally*).

*S. W. Moore, Cyrus Crane* and *Geo. J. Mersereau* for appellant.

(1) The verdict is excessive. Adams v. Railroad, 100 Mo. 555; Burdict v. Railroad, 123 Mo. 221; Nichols v. Plate Glass Co., 126 Mo. 35; Stolz v. Railroad, 188 Mo. 581; Henderson v. Kansas City, 177 Mo. 477; Smith v. Fordyce, 190 Mo. 1; Devoy v. Railroad, 192 Mo. 197; Phippen v. Railroad, 196 Mo. 321; Chitty v. Railroad, 166 Mo. 433; Dougherty v. Railroad, 197 Mo. 647; Gordon v. Railroad, 222 Mo. 516; Markey v. Railroad, 185 Mo. 366. (2) The verdict cannot be cured by a mere *remittitur*, but the case should be reversed and remanded. Cook v. Globe Ptg. Co., 227 Mo. 471; Partello v. Railroad, 227 Mo. 471.

*A. F. Smith, Boyle & Howell* and *Guthrie, Gamble & Street* for respondent.

As to the question of the extent of the injury to this young man's arm, it would be exceedingly difficult for the court to judge as fairly and as wisely as the jury and the trial judge. Were this a case of amputation, the situation would be certain and the difficulty vanish. The plaintiff in this case was, except in the aesthetic sense of appearances, worse off than if he had entirely lost his arm. If he had suffered an amputation of his arm at the shoulder, his pain, suffering and nervous fear of further injury would have shortly ended. He would, it is true, have had a greater deformity; but not a much greater deformity. He carries with him constantly an arm crooked and bent, which he can neither straighten out nor bend to any substantial extent; and at the end of it are nerveless fingers. He is constantly guarding and protecting it. It is a constant source of worry and uneasiness to him. The conditions so exhibited were not the efforts of a personal-injury claimant to exaggerate his condition. The thing that appealed to the jury most strongly in

favor of the plaintiff was his frank and straightforward manner; the palpably truthful manner in which he presented his injuries so far as they existed and refused to take advantage of the serious nature of the original injuries and his long period of recovery as an excuse for pretending to have pains and difficulties. He has practically little more use of his arm than if he had none. He cannot bend it or straighten it. He cannot raise it in any substantial way. It is not available to him as a means of defense or protection. He could not guard himself with it in case of a fall. He cannot lift any substantial weight with it. He can only do a little scribbling with it for short periods. This court cannot know the extent of that lack of use as it was disclosed to the jury. Plaintiff and the doctors illustrated it in the presence of the jury; and the jury had full opportunity to know how little use it was to him. The personal appearance of the plaintiff presented another aspect of the matter in respect to which this court is at a disadvantage. He showed himself in his appearance and manner a specially bright young man with a future open to young Americans before him previous to his injury. While he was given, after eight months' lay-off on pay, a job at the same rate that railway mail clerks receive when they first enter the service, yet this job was one of mere hack-work in checking mail sacks through the union station, calling for no training, experience or intelligence, and offering no future. He is debarred from any gainful occupation requiring manual effort. He had suffered pain at the time of the trial and was suffering pain still. He must bear throughout life all the annoyances of sudden nervous terrors. He will, a young man of twenty-six, throughout his days nourish and care for this arm and guard and protect it against chance of further hurt without reliance upon it in any emergency that may arise. He is forbidden all the sports and activities of youth. We cannot understand how anyone

would regard the amount awarded by this jury as compensation for the loss he has sustained and the ills that he must endure. It is no answer to plaintiff's claims to cite cases in which verdicts for a less amount have been held by this court to be not excessive. The decisions of this character cited by appellant are no standard by which to measure what the court would have done if the verdicts in those cases had been larger. Nor are decisions rendered in years past just criteria upon the questions of today. Why should, and how can, this court say that an amount which in the past was compensatory for a given injury is still compensatory therefor. And the courts are not saying it. This court is not saying it. The trend is reflected in the latest decisions of this court upon the subject. Loftus v. Railroad, 220 Mo. 470; Westervelt v. Railroad, 222 Mo. 335; Gordon v. Railroad, 222 Mo. 518; Richardson v. Railroad, 223 Mo. 325; Moore v. Railroad, 226 Mo. 689; Dean v. Railroad, 229 Mo. 425. Even twenty-two years ago a verdict in the same amount as that in this case was sustained for the complete loss of an arm. Dougherty v. Railroad, 97 Mo. 647.

GRAVES, J.—Plaintiff, a railway mail clerk, was injured by a collision between two of defendant's trains. He sued for damages in the sum of $12,000, and recovered judgment for $11,800. From this judgment defendant has appealed, and thus his troubles reach this court. Whilst the answer is a general denial, yet the defendant made no contention *nisi* as to non-liability, but directed the force of its efforts toward the measure of damages. The case here is therefore (1) that the verdict is excessive, and (2) that the verdict is so excessive as to bespeak passion and prejudice upon the part of the jury, when certain alleged misconduct of the jury is considered.

These contentions require somewhat in detail the facts as to the injury, as well as other pertinent facts bearing upon the question of damages.

Plaintiff was about twenty-five years of age and earning nine hundred dollars per year. In the collision he was thrown against the mail sack rack in the car, and his right arm was caught in the sliding door of the car, resulting in fractures of the bones near the elbow joint. There were bruises upon his head and ear which healed. He was rendered unconscious for some several hours. He was treated for some days by the physician of the defendant, Dr. Ayers, and upon his return to his home at Paola, Kansas, had his arm manipulated by an osteopath to obviate, if possible, absolute stiffness of the limb. In about eight months after the accident he resumed work for the Government, at the same wages, but not on the road. He was given work at the depot at Kansas City, and his new duties were to check, both in and out, the mail sacks. In so doing he had to do more or less writing; which he did. He worked at this for eight hours per day. In two fingers on the right hand he seems to have lost sensation. The medical testimony shows that the motion in the elbow is limited by reason of bony growth occasioned by the process of healing. These growths or knobs prevented the full use of the joint. Owing to the injury to one of the large muscles there was impaired motion in the shoulder joint. There was evidence of some soreness in the region of the fourth or fifth ribs. The strongest testimony on this injury to the arm is that of Dr. Foster, and is:

"I examined him the 6th of February, 1906, and I found that the arm was very much—greatly limited in its motion. He could not bend it to any degree, and he could not straighten it out entirely. I found there was some deformity on the outer side of the el bow, which undoubtedly prevented the true movement of the arm. There must have been a bone misplaced,

of course, that is a long time after the fracture became confirmed, and we attempted to bend it up, there was a sudden stop I saw, not as of any muscular or tendinous resistance, but it was an abrupt resistance, a stoppage of the bending. I found that there were scars on his elbow where an injury had been inflicted, I found also that the shoulder joint was very much limited in motion, could not raise it up, and I could not raise it any higher than this, could not get it up above his head, like that. Then there was a deep indentation of the large muscle of the chest that runs over and supplies that arm, helps in drawing the arm over in this way (indicating), and also in raising your body up; that muscle had been severed to a very great extent, if not altogether, right near its insertion into the arm. I found that there was imperfect motion of the fingers; he did not have very much of a grip; he could not clasp anything strongly, and all the motions and uses of that arm are very badly interfered with."

Plaintiff himself complains of being nervous. He says that when he sees something about to happen he becomes nervous. He illustrated by saying that if he sees a truck handle about to fall to the floor it makes him nervous. The several doctors, however, say nothing about this symptom, and express no opinion thereon. Their testimony is confined to the condition of the arm, and this they say will not improve in the future. Plaintiff can clasp this hand in the process of hand-shaking, but he and one physician say that he hasn't much "grip." He says that he can only raise four or five pounds with this arm, and that much writing tires him.

He lost no time, as the Government paid him during the entire time. He made no proof of any money expended for medicines or medical treatment. In fact he had no treatment for which he was liable except that of the osteopath, and there is no proof of the value of his services. There is proof that plain-

tiff suffered considerable pain during his treatment and suffered some at times up to the date of trial, some fifteen months after the accident.

Defendant introduced no evidence. The court gave a peremptory instruction to find for the plaintiff, together with other instructions not necessary to mention at this point. Defendant contends, as above indicated (1) that the verdict is grossly excessive, and (2) that it is so grossly excessive as to indicate passion and prejudice upon the part of the jury and that a *remittitur* should not be permitted, but the cause reversed and remanded for another trial. Of these in their order.

I. We agree with defendant that this verdict is much in excess of what the facts justify. It is true that the motion of this arm is much impaired. It is true that from the evidence he is not likely to have more motion therein, yet he has a very considerable use of the limb, and as distance lends enchantment to the scene, so time and use may add strength to this wounded member. He has lost no time. He has paid out nothing for medicine or medical attendance so far as the record speaks. He is earning the same now as before. His nervousness does not assume a very serious aspect. He himself only complains of this at times when something happens or he sees that it is about to happen. The verdict is very much beyond approved verdicts in this court. [Adams v. Railroad, 100 Mo. 555; Burdict v. Railroad, 123 Mo. 221; Nicholds v. Plate Glass Company, 126 Mo. 55; Stolze v. Transit Company, 188 Mo. 581; Henderson v. Kansas City, 177 Mo. 477, and authorities cited; Smith v. Fordyce, 190 Mo. 1; Devoy v. Transit Company, 192 Mo. 197, and cases cited; Phippin v. Railroad, 196 Mo. 321; Chitty v. Railroad, 166 Mo. 435, and cases cited; Dent v. Traction Company, 129 S. W. 1045; Dougherty v. Railroad, 97 Mo. 647; Gordon v. Railroad, 222 Mo. 516; Markey v. Railroad, 185 Mo. 348, l. c. 366.]

II.   It is next urged that if we find the verdict grossly excessive we should not order a *remittitur,* but reverse the case for new trial.   This we do not understand to be the rule as announced by this court in the recent case of Cook v. Globe Printing Company, 227 Mo. 471.   At page 354 of the opinion of the majority in the Cook Case the rule is thus announced: "The rationale of these late cases is that the fact that a verdict is too large does not itself indicate that the jury were actuated by passion or prejudice, where there was no error in the admission or rejection of testimony or in the instructions of the court, and no misconduct on the part of the jury was shown, and the evidence established that the plaintiff was entitled to a substantial verdict, and that in such case, if the plaintiff would consent to a *remittitur* of a part of his verdict, the defendant could not complain."

The writer did not then, and does not now, subscribe to this rule, but it is the announcement of the Court in Banc, and it is not for a division of this court to do otherwise than bow in submission to the majority rule announced by the whole court.   This I do, and in so doing must hold that there is not in this record sufficient misconduct upon the part of the jury as would forbid their verdict to stand in some adequate sum.   We have split verdicts in twain and permitted the remainder to stand.   [Moore v. Transit Co., 226 Mo. 689, and cases cited therein.]   We have cut off two-thirds of the verdict and yet permitted it to stand.   [Cook v. Globe Printing Co., supra.]

So, in this case, whilst we think the verdict grossly excessive, yet if the plaintiff will within ten days remit $5800 therefrom as of the date of its rendition, we will permit it to stand for $6000 as of the date of its rendition.   Should such *remittitur* be entered the judgment as above indicated will be affirmed, otherwise it will be reversed and remanded.   All concur, except *Valliant, J.,* absent.