LLOYD CULLISON, Appellant, v. ROLLA WELLS, Receiver of United
Railways Company of St. Louis.—297 S. W. 370.

Division Two, July 13, 1927.

1. **NEW TRIAL: Weight of Evidence: Deference to Trial Court.** A liberal
construction is placed upon the statute which authorizes the trial court to
set aside the verdict of the jury and grant a new trial. The exercise of the
power is regarded as a wholesome thing in the administration of the law,
and appellate courts encourage, rather than discourage, trial courts to
exercise their broad discretion to grant a new trial on the ground that the
verdict is against the weight of the evidence.

2. ———: **Conflict in Evidence: Reinstating Verdict: Negligence: Humani-
tarian Rule.** Where the pedestrian's own evidence presents a sharp con-
flict on the issue of timely and sufficient warning to him of the approach of
the street car by which he was struck as it rounded a curve in the intersec-
tion of the streets, and his case was submitted on the humanitarian rule
alone, that is, on the question whether the motorman exercised ordinary
care to avoid injuring him after the motorman saw he was in danger of
being struck and that he was not aware of the impending danger, and the
trial court set aside the verdict on the ground that it was against the
weight of the evidence, this court will not hold that the trial court abused
its discretion and reinstate the verdict.

3. ———: ———: ———: ———: **Different Inferences.** Where a
fair-minded jury might draw different inferences from the conflicting sub-
stantial evidence, that is, where they might reasonably differ as to whether
the motorman of the street car which struck plaintiff as he was walking
across the street was guilty of any negligence which concurred with plain-
tiff's negligence to cause the accident, or whether the accident and plain-
tiff's injuries were caused solely by his own negligence in failing to ex-
ercise ordinary care for his own safety, this court will not rule that the
trial court erred in setting aside a verdict for plaintiff on the ground that
it was against the weight of the evidence.

---

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2816,
p. 833, n. 57; p. 834, n. 60.  **New Trial,** 29 Cyc., p. 827, n. 45.

Appeal from Circuit Court of City of St. Louis.—*Hon. Wilson A.
Taylor,* Judge.

AFFIRMED.

*John F. Clancy, Mark D. Eagleton* and *John S. Marsalek* for ap-
pellant.

(1)  Unless the record contains substantial testimony in favor of
the party granted a new trial on the ground that the verdict is

against the weight of the evidence, the action of the court in setting aside the verdict will be regarded as arbitrary, and an abuse of his discretion, warranting reversal. Ordelheide v. Land Co., 208 Mo. 239; Bush v. Ry. Co., 164 Mo. App. 420; Rigby v. Transit Co., 153 Mo. App. 336; Loftus v. St. Ry. Co., 220 Mo. 479; Seeger v. Silver Co., 193 Mo. 407; Rodan v. Railroad, 207 Mo. 406; 2 R. C. L. sec. 176, p. 211; R. S. 1919, secs. 1452, 1453. (2) The evidence shows without dispute that the plaintiff was completely unaware of the fact that the car, which he had seen standing still, facing south, would turn west into Geyer Avenue; that he was oblivious to his danger from its approach; that the motorman saw him for a distance of fifteen feet, and at all time fully realized that plaintiff was unaware of the approach of the car, and was not going to stop, but would continue on into its path; that the motorman could at any time have safely stopped the car within three or four feet, and thus avoided the collision, but failed to do so. These facts establish defendant's liability for plaintiff's injury, as a matter of law. Bunyan v. Rys. Co., 127 Mo. 21; Eckhard v. Transit Co., 190 Mo. 593, 619; Moore v. Transit Co., 194 Mo. 11; Holmes v. Railroad, 207 Mo. 161; Hornbuckle v. McCarty, 295 Mo. 170; Ellis v. Ry Co., 234 Mo. 680, 681; Dutcher v. Railroad, 241 Mo. 162-163; Maginnis v. Railroad, 182 Mo. App. 713, 268 Mo. 667; Hale v. Railway Co., 287 Mo. 499; Good Roads Co. v. Ry. Co., 217 S. W. 858; Albert v. Rys. Co., 232 S. W. 794; Chamberlain v. Railroad, 133 Mo. 587, 605; 2 Shearman & Redfield, Negligence, secs. 483, 484. (3) Whether, as the motorman stated on direct examination, the car had "just about stopped" when the collision occurred, or whether, as he said on cross-examination, the car stopped within a foot or two after the fender struck plaintiff, is immaterial, for in either event, upon the undisputed facts, the legal cause of the collision was the failure of the motorman to stop the car in time to avoid the collision, when he had ample time to do so. Hornbuckle v. Mc-Carty, 295 Mo. 170, 173; Holmes v. Ry. Co., 207 Mo. 162; Weber v. Rys. Co., 201 Mo. App. 695; Saulan v. Ry. Co., 190 S. W. 714; Jesse v. Rys. Co., 238 S. W 138; Nolan v. Rys. Co., 247 S. W. 429; Hopfinger v. Young, 179 S. W. 747; Rowe v. Hammond, 172 Mo. App. 203; Dauber v. Josephson, 209 Mo. App. 538.

*Charles W. Bates, T. E. Francis* and *J. F. Evans* for respondent.

(1) The action of the trial court in granting defendant a new trial on the ground that the verdict is against the weight of the evidence will not be disturbed on appeal if there is any substantial evidence to support it, and unless the case is such that no verdict in favor of defendant could ever be allowed to stand. Fitzjohn v.

Transit Co., 183 Mo. 74; Casey v. Transit Co., 186 Mo. 229; Metropolitan Lead. & Zinc Co. v. Webster, 193 Mo. 351, 364; Higgins v. Higgins, 243 Mo. 164; Lyons v. Carder, 253 Mo. 539, 561; Sutter v. Met. St. Ry. Co., 188 S. W. 67; State ex rel. Railway Co. v. Ellison, 268 Mo. 225.   (a)   There was substantial evidence in favor of defendant in this case, and a verdict in his favor could have been allowed to stand.   (b)   There was testimony that a continuous warning had been given plaintiff from the time he reached a point more than fifteen feet from the track until he was injured.   (c)   There was testimony that the car was stopped and that plaintiff continued forward and fell over the fender.   (d)   Plaintiff saw the street car before he started across the street and was bound to know that it would start within a short space of time.   He had never been in the locality before and could not assume that it would continue south on Mississippi Avenue instead of turning west on Geyer, as there were tracks leading in both directions.  He paid no further attention to the car and did not see it again, although he was walking in a direction almost in line with its approach and there was nothing to prevent him from seeing it.   Under such circumstances, the jury would have been warranted in finding that plaintiff's own contributory negligence was the proximate cause of his injury, and he could not recover on any theory of primary negligence.   Goggins v. Wells, 273 S. W. 1107; Hoodenpyle v. Wells, 291 S. W. 520; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362; Huggart v. Mo. Pac. Ry. Co., 134 Mo. 673; Markowitz v. St. Ry. Co., 186 Mo. 350; Mockowik v. Ry. Co., 196 Mo. 550; Keele v. Railroad, 258 Mo. 78; Kinlen v. Railroad, 216 Mo. 158; State ex rel. Frisco v. Reynolds, 289 Mo. 488; Morrow v. Hines, 233 S. W. 495; Evans v. Railroad, 233 S. W. 397; Boring v. Railroad, 194 Mo. 541.  (2)   The motorman had sounded the gong constantly from the time he first saw plaintiff.   He could presume that this warning was heard and that plaintiff would stop before getting within the path of the car, and could act upon such presumption until plaintiff got within a step or two of the track, the actual danger zone.   State ex rel. Frisco v. Reynolds, 289 Mo. 479, 233 S. W. 219; Beal v. Railway, 256 S. W. 733; Lackay v. Rys. Co., 288 Mo. 120, 143; Keele v. Railway, 258 Mo. 79; Boyd v. Railway, 105 Mo. 381; Boring v. Railway, 194 Mo. 541.

HENWOOD, C.—The plaintiff filed suit in the Circuit Court of the City of St. Louis for damages resulting from personal injuries suffered by him when he collided with a street car operated by defendant as receiver of the United Railways Company of that city. Upon trial the jury found for the plaintiff and assessed his damages at $10,000.   The trial court sustained defendant's motion for a new trial on the specified ground that the verdict is against the

weight of the evidence. The case is here on plaintiff's appeal from the order granting defendant a new trial.

All of the evidence in the case was offered by plaintiff, the defendant being content to stand on his demurrer. We will state all facts necessary for the proper consideration of the question presented, as we gather them from the abstract of the record.

The accident occurred about six or 6:30 o'clock on the evening of December 19, 1922, while plaintiff was walking northwardly across Geyer Avenue on the west side of its intersection with Mississippi Avenue in the city of St. Louis, where he collided with one of defendant's street cars, which was turning off of Mississippi and onto Geyer Avenue. Mississippi Avenue extends north and south and Geyer Avenue east and west, both being public streets. At this intersection defendant had one track in the middle of Geyer Avenue on which cars ran east; one track on Mississippi Avenue on which cars ran south; and another track leading off of the Mississippi Avenue track by means of a switch a short distance north of the intersection and curving around the northwest corner of the intersection and extending westwardly on the north side of Geyer Avenue. This track was used by some of the southbound cars on Mississippi Avenue which turned west at this intersection and ran west on Geyer Avenue. A plat and four photographs (Exhibits A, B, C, D and E), showing the street conditions and measurements and the location of the street railway tracks at this intersection and the buildings at and near the four corners thereof, were offered in evidence and referred to by some of the witnesses in giving their testimony. The plaintiff, while on the stand, put certain marks on the plat by which he indicated the point at which he left the curb on the south side of Geyer Avenue, the point where he collided with the street car, and the point where he observed the street car standing on the north side of the intersection before it started around the curve and west on Geyer Avenue. There were street lights on the four corners of the intersection and some additional light from the illuminated windows of the adjacent store buildings, but all of the witnesses agree that it was dark on the north side of the intersection.

The witness Charles Kunsemueller, civil draftsman and deputy city surveyor, made the plat (Ex. A) and his testimony was explanatory of the various things shown on the same. According to actual measurements made by this witness, Geyer Avenue, at the point in question, is 46 feet and 1 inch in width, from curb to curb; the distance from the point where plaintiff left the curb to the point of his collision with the street car is 35 feet, and the distance from the point where plaintiff first observed the street car (five feet south of the south rail of the track used by eastbound cars) to the point of collision is 25 feet; and from the point where plaintiff saw the car

standing on Mississippi Avenue to the point of collision, following the curve of the track around the corner of the intersection to Geyer Avenue, is close to thirty feet.

At the time of the accident plaintiff was 39 years of age, resided at the American Hotel, and was employed as advertising solicitor for the Herald Press of St. Louis. He testified that he had never been in "that locality before that night;" just prior to the accident he got out of an automobile at or near the southwest corner of the intersection and started across Geyer Avenue from the south curb to the north curb on "the crossing that pedestrians ordinarily use;" it was pitch dark; Mr. B. J. Sullivan was crossing with him and they were three or four feet apart; when he was "approximately four or five feet away" from the track used by eastbound cars he saw a street car standing on the north side of the intersection about even with the curb line; he did not know there was a track leading off of Mississippi Avenue onto Geyer Avenue or that the car turned onto Geyer Avenue; and he did not see the car after that until it struck him. He further testified: "I supposed the car I saw standing still would continue south. I never got any warning after it started up, or after it turned. When I was struck by the car I grabbed hold of something they have to put the signs on the car there. I don't know what they call it. That was the first thing that I could see. I just grabbed up and caught ahold of it. I fell on the fender. My right leg was struck. I was taken from the fender by the motorman, and I think Mr. Sullivan."

The nature and extent of plaintiff's injuries are not disputed. It appears from the testimony of his physicians that he suffered a serious fracture of both bones of his right leg between the knee and ankle, at about the location of the "shin bone," which has left him with "a forward bowing of the lower right leg." The breaking of the bones of plaintiff's right leg tends to show where he was struck and the force with which he was struck in the collision with the street car, and his injuries are described for this purpose only.

On cross-examination plaintiff said: "When I started and left the curb, I looked to see if there was cars in every direction;" that the last time he looked was when he was about five feet south of the "first car track;" it was then he saw the car standing on Mississippi Avenue "going or headed south;" and he further said: "The car was lighted up when I looked at it, the headlight was shining. I was not talking to anybody as I walked across the street. I don't remember whether Mr. Sullivan was in front or behind me, but I said nothing to him. I walked on across, I did not fall right over or stumble over the fender and make a grab." He walked at an ordinary walk and "picked" his way across; "it was a pitch dark night and the streets were not well lighted there;" he had no

difficulty, however, in seeing; the car stopped immediately after it hit him, within four or five or six feet.

On redirect-examination, when asked by the court if it was the hangover of the fender that struck him, he said, "Yes, sir. The fender as it came around the frame. It was that thing that sticks out in front there; that long, basket sort of thing; the fender, I suppose." And he was further questioned by the court, as follows: "Q. *But you hadn't reached the track when you were struck?* A. *No, sir.*" (Italics ours.)

On recross-examination, he said: "I was looking due north at the time I was struck. I did not see the car when it struck me. I felt it, but I didn't see it. I supposed it was going due south. I didn't see the headlight at the time I was struck. I am sure of that."

Mrs. Edwards testified that she was walking east · on the north side of Geyer Avenue when she witnessed the accident; she didn't see the man before, but just as the car hit him; it was the front part, the fender that hit him; he "hung" onto the front of the car and the car went about five or six feet before it stopped; she heard no bell or warning sounded before the man was struck; it was dark, real dark; it isn't a very well lighted crossing; she had never seen the plaintiff before the accident.

On cross-examination, she said she didn't know whether plaintiff was running, walking or standing, or *whether he walked or fell over the fender;* in the statement made three days after the accident she said the car stopped within two feet, but she now judged it to be "four or five feet anyway."

William Spitzemiller, fifteen years old, testified: "The front bumper of the car hit him. After the car hit him, he fell on the car, or grabbed something, and the car dragged him a few feet. I was standing on the northwest corner at the time, starting to make a fire. The streets were very dark at the time. Prior to the time that Mr. Cullison was struck, I heard no bell sounded. The street car came around the corner fast. It didn't slacken its speed until after it hit him, and then it stopped as quick as it could." On cross-examination, he said: "The front part of the fender hit him, about one foot away from the side. It wasn't quite the middle that hit him. He had moved or continued moving until he got pretty close to the center of the fender when he was hit. The car was lighted up; it had a headlight on it. There was a lamp post on each corner, and they were all lighted up."

At this point in the trial counsel for plaintiff offered in evidence and read to the jury the Vigilant-Watch Ordinance of the city of St. Louis, which was later withdrawn from the consideration of the jury as will hereinafter appear.

Here counsel for plaintiff rested his case. The defendant interposed a demurrer to the evidence and the same was overruled. Counsel then asked and was permitted to reopen the case.

Whereupon, John T. Cain, the street-car motorman was called to the stand. He testified that the car *"didn't collide"* with plaintiff (italics ours); when he first observed plaintiff crossing, the car was "half around the curve" and plaintiff "about fifteen feet" south of the track the car was on; plaintiff "seemed to be looking over his shoulder;" he was looking away from the car; at that time the car was fifteen or twenty feet from him, and the car was moving at the speed of about four miles per hour; at that rate of speed he could stop the car in about four feet; plaintiff kept coming toward the car and did not 'indicate that he was going to stop; it was dark; rang the bell when he first saw plaintiff and continued ringing the bell; rang the bell from the time the car started around the curve; rang it constantly; rang the bell to advise plaintiff of the danger, "to attract his attention;" don't think he ever looked. The motorman further testified, as follows (Italics ours):

"Q. And finally you applied your brakes, didn't you? A. *Yes, sir; I applied my brakes and stopped, and he fell over the step or fender.*

"Q. So that you were actually stopped at the time that he struck your car? A. *Yes, sir; just about stopped.*

"Q. You went about one foot? A. After he hit the car, do you mean?

"Q. Yes, sir. A. *I don't think so.*

"Q. How much? Six inches, wasn't it? A. *I don't think so.*

"Q. How far? A. *I think it was just about stopped when it happened.*

"Q. Did you put your brakes on as fast as you could or not? A. *I stopped as quick as I could so that I wouldn't injure anybody in the car or throw anybody in the car down.*

"Q. And from the time you applied your brakes until your car actually came to a stop, it didn't move over three feet, did it? A. *Hardly. It might have moved that far.*

"Q. About three feet? A. *Three or four feet."*

And further testifying, the motorman said plaintiff was walking at an ordinary rate, about the same rate at which the car was moving; he continued watching plaintiff; he saw him fifteen feet from the track, ten feet from the track, and five feet from the track; still ringing bell then to attract his attention; the extreme left side of the fender collided with plaintiff.

On cross-examination, he said the car was lighted up and the headlights were on; the headlights showed twenty-five or thirty feet; when plaintiff was fifteen feet south of track on which car was

moving, the car was fifteen or twenty feet east of plaintiff's line of progress; he did not stop, but continued walking; was sounding the gong all the time; car stopped within few feet after the collision, within a foot.

The petition contained several specifications of negligence as the basis of plaintiff's right of recovery, including the violation of the humanitarian rule.

The answer, in addition to some admissions as to formal matters, denied all allegations of the petition, and set up the affirmative defense that plaintiff's injuries were caused by his carelessness and negligence in going into and in close and dangerous proximity to a moving street car when, by the exercise of ordinary care, he could have avoided the collision.

The reply was a general denial of the affirmative allegations of the answer.

As above stated, the defendant stood on his demurrer. The case was submitted to the jury on the humanitarian doctrine only, an instruction being given for the plaintiff which predicated a recovery on this doctrine and a counter instruction for the defendant. All other specifications of negligence were withdrawn from the consideration of the jury by instructions given for the defendant.

The sole question before us on this record is whether the trial court acted within the bounds of its judicial discretion in sustaining defendant's motion for a new trial on the ground that the verdict is against the weight of the evidence.

Our appellate courts have always placed a liberal construction on the statute which authorizes trial courts to set aside jury verdicts and grant new trials. They have always regarded the exercise of this power as a wholesome thing in the administration of the law. The tendency of their rulings has been to encourage rather than discourage the trial courts in the exercise of a broad discretion in passing upon the weight of the evidence when considering motions for a new trial. The great importance of this matter in the functioning of the trial courts has been the subject of special emphasis in numerous decisions of this court. Notably, among these, is the case of State ex rel. v. Ellison, 268 Mo. l. c. 231, in which FARIS, J., a most learned and painstaking jurist, speaks for the court as follows:

"Our statute (Sec. 2022, R. S. 1909), and the decisions of all of the appellate courts construing it, have been peculiarly benevolent and encouraging to the trial courts in the matter of giving such courts a broad discretion in passing upon the weight of the evidence in their consideration of motions for a new trial. The statute is definitely expressive of a few phases of the court's inherent powers, and our own rulings upon it are so sanctified by age and uniformity as to have become almost elementary. Regardless of the seeming

weight of the evidence opposed to the action of the court *nisi* in setting aside a verdict of a jury on this ground, we do not interfere so long as there is any substantial evidence to bolster up the trial court's action. It is only when, had the verdict been the other way about, we would not for lack of supporting evidence have permitted it to stand, that we interfere with the trial court's discretion." The statute referred to is now Section 1453, Revised Statutes 1919.

The rule is briefly stated in somewhat different fashion in the earlier case of Fitzjohn v. Transit Co., 183 Mo. l. c. 78, wherein the court said: "The trial court has a discretion to grant one new trial, and this court will not interfere with its exercise of that discretion, however much it may disagree with that court upon such a ruling, where there is any substantial evidence to support it, unless the case is such that no verdict in favor of the party to whom the new trial is granted could ever be allowed to stand."

See also the cases of Haven v. Ry. Co., 155 Mo. l. c. 232; Casey v. Transit Co., 186 Mo. l. c. 232; Higgins v. Higgins, 243 Mo. l. c. 173; Lyons v. Corder, 253 Mo. l. c. 561; Sutter v. Ry. Co., 188 S. W. l. c. 67; Carnie v. Toll, 281 S. W. l. c. 42.

Counsel for plaintiff concede, of course, the application of this rule in the case at bar, but they earnestly insist that the evidence in this case establishes defendant's liability as a matter of law; that there is no substantial evidence to sustain a verdict for the defendant; and that, therefore, the order of the trial court in granting defendant a new trial should be reversed and the verdict for plaintiff reinstated.

We are unable to agree with counsel in this contention. After a very careful examination of the evidence it is our opinion that this case and the cases relied on by plaintiff are readily distinguishable on the facts. The evidence in this case presents a sharp conflict on the issue of timely warning to the plaintiff of the approach of the car. The plaintiff testified: "I never got any warning after it started, or after it turned." The witnesses Edwards and Spitzemiller both said they heard no bell or other warning. The motorman insisted in answer to repeated questions from both sides that he rang the bell all the way around the curve and, especially, after he saw plaintiff approaching the track, "to attract his attention." There is also some conflict in the evidence and considerable confusion among the witnesses as to just how the collision occurred and as to how far the car moved after the collision. Moreover, there is some evidence tending to show that the car was stopped or practically so at the time of the collision. On direct-examination the motorman testified: "I applied my brakes and stopped and he fell over the step or fender. I think it [the car] was just about stopped when it happened." Mrs. Edwards (referring to the plaintiff) said: "I don't

know if he was walking, running or standing. I don't know whether he walked or fell over the fender." The plaintiff's own testimony on this point is significant. In answer to the court's questions, he said that it was the *hangover of the fender* that struck him and he *had not reached the track* when he was struck. The motorman further testified on direct-examination as follows: "I stopped as quick as I could so that I wouldn't injure anybody in the car or throw anybody in the car down." And on cross-examination he said "the car stopped within a few feet, or within a foot," after the collision.

Plaintiff's right of recovery was submitted to the jury on the question of whether or not the motorman exercised ordinary care to avoid injuring plaintiff after he saw plaintiff was in danger of being struck and that plaintiff was not aware of the impending danger. In determining this question it was necessary for the jury to pass upon the conflict in the evidence as to whether the motorman gave plaintiff any warning of the approach of the car and as to the sufficiency of such warning, if any was given. Also, as to just when the motorman stopped the car, and as to whether, under all the surrounding facts and circumstances, he was justified in waiting to apply the brakes until the time he did actually apply them.

There being a conflict in the evidence on these vital issues of fact, we think the members of a fair-minded jury might draw different inferences from the evidence and might reasonably differ as to whether the motorman was guilty of any negligence which concurred with plaintiff's negligence in causing the accident, or whether the accident and plaintiff's injuries resulting therefrom were caused solely and only by plaintiff's own negligence in failing to exercise proper care for his own safety. It is not our province to pass on the weight of the evidence or its probative force and we have no disposition to do so, but, the premises considered, it is our conclusion that there was substantial evidence to support a verdict for the defendant, and that applying the well settled rule, above stated, the order of the trial court in granting the defendant a new trial should be affirmed.

It is so ordered. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD C., is adopted as the opinion of the court. All of the judges concur.