IDA SOFIAN, By Her Next Friend, MOLLIE SOFIAN, v. THOMAS H. DOUGLAS, Appellant.—23 S. W. (2d) 126.

Division One, December 30, 1929.

*Wilbur C. Schwartz* for appellant.

*Banister, Leonard, Sibley & McRoberts* for respondent.

ELLISON, C.—This is an action for personal injuries sustained by plaintiff, then a girl some nineteen or twenty years of age, in being run down by defendant's automobile, driven by himself, while she was walking across a public street in the city of St. Louis. The jury gave her a verdict for $1,000. She filed a motion for a new trial upon the grounds, among others, that the verdict was against the weight of the evidence, was inadequate and was the result of passion and prejudice of the jury. The motion was sustained by the trial court for the reason, as assigned of record, that "the court feels that the verdict of the jury in assessing damages shows a prejudice and bias in that the amount awarded is inadequate." From that order

the defendant has appealed. The damages being laid in the petition at $10,000, the appeal was brought to this court.

Upon a former trial the plaintiff recovered a verdict for $5,000. The defendant filed a motion for a new trial. The court made a conditional order for a *remittitur* of $1500. The order was not complied with and the court sustained defendant's motion for a new trial on the stated grounds that the verdict was excessive. The plaintiff appealed from that order to the St. Louis Court of Appeals. The Court of Appeals affirmed the order and remanded the case. [Sofian v. Douglas, 295 S. W. 828.] The same learned judge presided at both trials.

The petition charges that while the respondent was walking across a public street in the city of St. Louis the appellant violently and negligently drove his automobile against her and knocked her down upon the street, thereby causing her serious and permanent injuries. Negligence is predicated upon a violation of a traffic ordinance, a statute and the humanitarian rule. The answer was a general denial, supplemented with a plea of contributory negligence. · The reply denied the latter plea.

As the sufficiency of the evidence to justify the trial court's action in granting the new trial is challenged, a consideration of the evidence is necessary. The evidence, summarized in part and quoted in part, is as follows:

The impact of the automobile against the respondent was of such force as to shatter a headlight, bend a front fender of the car and to knock her down upon the paved street, rendering her unconscious. She was at once picked up by eye-witnesses and taken to Barnes Hospital.

At the trial she testified she had no memory of anything that happened after she had proceeded to about the middle of the street. She became partially conscious later that night or early next morning. When she saw doctors and nurses she realized that she was in a hospital. She had "terrific" pains in the head all over, particularly in the front part; she was dazed. After being in the hospital about a day she was given food. She could not smell or taste it. She vomited on numerous occasions, especially on the first two days. She remained in bed in the hospital nearly two weeks.

Upon leaving the hospital she went to her home, where for a few days she remained in bed before resuming her work as a stenographer. Although weak, nervous and dizzy, she was able to perform her work by resting occasionally. Her work was light, owing to the leniency of her employer. On one occasion she fell at her home from dizziness. She had suffered attacks of dizziness ever since the injury and down to the second trial. She was dizzy about once a week the first six months and occasionally thereafter. She had

never regained the sense of smell in any degree. Her sense of taste was still impaired to the extent that she could taste sweet, sour, salt and bitter, but no blended flavors in food or otherwise.

While in the hospital the respondent was attended by Dr. Ernest Sachs, a specialist in brain surgery and a staff surgeon of that institution. His attendance began on the morning following the injury and he made and kept a record of the case.

A fair summary of Dr. Sachs's testimony reduced to narrative form is as follows: she was semi-conscious; she had vomited—when she came in she had evidence of abrasions—bruises on her arms and legs, and when I saw her she was semi-conscious—she could be roused, but she didn't answer questions intelligently. There was no evidence of bleeding, either from her nose or her ears, and examination of her nervous system showed nothing abnormal. She had an X-ray picture taken on admission and that showed no evidence of a fracture. The diagnosis at that time was made that she had a severe injury to her brain—so-called concussion, and these abrasions to her arms and legs. She continually complained of pains in the head. She said she couldn't smell.

In my own hand-writing I wrote this: "Complete loss of smell" —anosmia. She had about a degree of temperature for about four days. That is consistent with an injury to the brain or concussion, but doesn't necessarily have any connection. I put down also that the "patient evidently had a severe cerebral concussion, with nausea and vomiting; X-ray negative; has complete loss of smell; to have nasal examination to determine if there is a fracture to account for this." That is my note. The nausea persisted about two days. Nausea is a very common symptom of concussion of the brain. It is consistent with brain injury, but lots of people are nauseated who haven't any brain injury. Vomiting is also—corroborative. The loss of the sense of smell could have been caused by the injuries. The seat of the sense of smell is in the temporal lobe of the brain; it is the ultimate source of the sense of smell. If a person were thrown down in the street with sufficient violence to make that concussion it was perfectly possible to do permanent damage to that part of the temporal lobe that controls smell. It has been shown, and I have seen it frequently myself, that in a large number of cases where death followed injury the place where the brain was more frequently injured was at the tip of this portion of the brain. The jolt to the brain struck this bone and the individual was injured in that way. The nerves of smell start in the nose and come in through these little holes of the cribriform plate and go in a certain route (stated) and end in the temporal lobe.

I have seen the plaintiff (the respondent) twice since she left the hospital; first, just before the first trial and next just before this

trial. I tested her and found no change in her condition, so far as the sense of smell is concerned, from what I found from prior examinations. The sense of smell plays some part in the taste or aroma of some food, some things. That is, some things we think we taste we really smell. The basic things we taste are sweet, sour, bitter, salt. The loss of the sense of smell is determined subjectively and by tests, not objectively. Each time I blindfolded her so she couldn't see what I brought and tested her sense of smell with such substances as oil of cloves, wintergreen and asafetida. She breathed the asafetida for fifteen seconds at least; it almost made me sick. She said she couldn't smell it, and so far as I could observe from watching her she didn't smell it. She didn't bat an eye.

Dr. M. W. Hoge, a neurologist, of St. Louis, had made four examinations of the respondent in different years, one of them shortly before the second trial. He found the right pupil larger than the left in a dim light, some damage to that part of the motor tract coming from the left side of the brain, no impairment of sensation over the surface of the body, but a weak pulse and distinctly low blood pressure. Taken in connection with the facts of the collision, the vomiting and the headaches were, he said, indicative of brain injury. In view of all these matters and his own examinations and tests, the injury could have caused the total loss of smell. From what he found there was, in his opinion, an inter-cranial lesion. His tests of her sense of smell were made by having the respondent inhale the odor arising from spirits of cinnamon and of cloves and tincture of asafetida; substances, he said, that the normal person would smell distinctly. He observed no reaction on her part that indicated that she smelled them.

Dr. E. J. Norris, of St. Louis, a specialist in eye, ear, nose and throat, examined the respondent twice, the last time being shortly before the second trial. In his tests made with ether, chloroform, oil of roses and tincture of iodine, he was unable to elicit from her that she smelled any of them, he said. Further, the enjoyment derived from mixed flavors and aroma of food comes by the sense of smell, though the ordinary individual thinks it comes from taste. The respondent was not able to perceive any flavors; but was able to taste the four basic things, sweet, sour, bitter, salt. The same result was obtained in each test. He illustrated and explained how the injury in question could cause the total loss of smell. He believed her condition to be permanent.

Dr. Gray Briggs testified in behalf of the appellant. He was an X-ray expert. He took five X-ray photographs of the respondent's skull. The pictures showed no fracture and showed nothing wrong with the skull. Pictures taken two years after the injury, as these

were, might not show a fracture of the cribriform plate that may have occurred.

Dr. Wm. D. Black, an eye, ear, nose and throat specialist, of St. Louis, was appointed by the court, on motion of the appellant, to examine the respondent and make report. He examined her on November 16, 1925, and on no other occasion. On the second trial his evidence as given at the first trial was read. He reported that she stated to him she was unconscious about four hours; did not have any nose bleeding; did not bleed from the ears; had violent headaches for two weeks after the injury and later not so violent; that some three days after the injury she noticed she could not smell the fragrance of flowers; that she could taste only sour, salt or sugar, but could not differentiate anything else, that is, she could not tell bitter or any of the special senses of taste. He examined her nose. The septum of the nose—that is the partition—was straight but for two small projections which did not interfere with the general sense of smell. He found the turbinal bones and olfactory region normal. He tested her sense of taste and smell with oil of roses, turpentine and chloroform. She could distinguish salt from sugar and could tell acids like vinegar. Her taste appeared normal. He used the chloroform to test for malingering, since it can be tasted as well as smelled. When she said she couldn't smell it he told her she could taste but not smell it. She then said she could taste it, but could not say what the taste was. He knew that anyone could detect that it was sweet, and he knew that she could taste sugar, as well as sour, salt and bitter. In his opinion she had not lost her sense of smell.

The appellant takes the position that it was error to sustain the motion for new trial, because (1) the verdict was the second one for the same party, (2) its inadequacy, if any, was no indication of prejudice and bias on the part of the jury, and (3) it was substantial and not inadequate.

I. The suit is for $10,000. The sustaining of the plaintiff's motion for a new trial set aside the verdict in her favor for $1,000 and reinstated her claim for the full $10,000 as a pending cause of action. The defendant appeals, contending the granting of the new trial was error, that the plaintiff's asserted cause of action no longer exists as such, but was merged in the verdict, and that he owes her only the $1,000 and not the $10,000. The amount in dispute is the difference between the two sums, or $9,000. Jurisdiction of the appeal is therefore lodged in this court. [Sec. 2418, R. S. 1919; Craton v. Huntzinger (Mo.), 187 S. W. 48 (Mo. App.), 177 S. W. 816.]

II. Regarding the first assignment. The appellant concedes the statutes pertaining to new trials (Secs. 1424, 1454, R. S. 1919) do

264

not apply literally in this case because both new trials were not granted to the same party—the first was to the defendant and the one under review was to the plaintiff. But it is urged the reason underlying the statutory rule is applicable, and in support of that proposition reference is made to Boyce's Admr. v. Smith's Admr., 16 Mo. 317, 321. That case says that "the object of the law, in restraining courts from granting the same party two new trials, is, to prevent the substitution of the verdict of the court for that of the jury. When two juries, on the same issue, find the same verdict, the law will not permit the court to interfere with the last finding, as the jurors are the constitutional triers of the facts."

Appellant asserts the instant case comes within the above pronouncement on the theory that since both verdicts were for the *same party* it must be said two juries have found "the same verdict on the same issue." But this contention cannot be sustained. The cited statutes and decisions all contemplate and forbid interference by the trial court twice *in favor* of the same party. If a trial court can set aside one verdict as excessive at the instance of one party, it certainly can set aside another verdict as inadequate at the instance of the other party. The issue is different and the party to whom the relief is awarded is different, though it is true the action of the court in both instances is or may be referable to the same power of passing on the weight of the evidence. [State ex rel. A., T. & S. F. Ry. Co. v. Ellison, 268 Mo. 225, 186 S. W. 1075; State ex rel. Am. C. & F. Co. v. Danes, 313 Mo. 681, 688, 282 S. W. 389, 390; Kelly v. Columbia Box Co. (Mo.), 248 S. W. 589, 590; Settles v. McGinley (Mo. App.), 296 S. W. 846.]

III. The next two assignments may be treated together. They are that the verdict for $1,000 was substantial, under the evidence, and that the size of the verdict, itself, is no indication of bias and prejudice on the part of the jury. For these reasons it is contended the trial court abused its discretion in setting the verdict aside. The authorities cited are Boggess v. Met. St. Ry. Co., 118 Mo. 328, 339-340, 23 S. W. 159, 162, 24 S. W. 210; Clifton v. K. C. S. Ry. Co., 232 Mo. 708, 715, 135 S. W. 40, 42; Cochran v. Wilson, 287 Mo. 210, 230, 229 S. W. 1050, 1056.

None of these decisions are in point. In all of them the *trial* court had refused to interfere with the verdict and *this* court was asked to do so. But the *nisi prius* and the appellate courts work under different rules. As to the latter it is true the cases say the amount of the verdict alone, small or large, is not evidence of misconduct, passion, or prejudice sufficient to warrant a reversal and remanding

of the cause. This is expressly held touching inadequate verdicts in Cochran v. Wilson, supra (287 Mo. l. c. 230, 229 S. W. l. c. 1056), and Sullivan v. Wilson (Mo. App.), 283 S. W. 743, 744; and with respect to excessive verdicts the rule seems firmly established, the error being cured by enforced *remittitur*. [Clifton v. K. C. S. Ry. Co., supra (232 Mo. l. c. 715, 135 S. W. l. c. 42); Varley v. Columbia Taxicab Co. (Mo.), 240 S. W. 218, 224; Taylor v. Mo. Pac. Rd. Co., 311 Mo. 604, 627, 279 S. W. 115, 121.]

But trial courts have more latitude. They may pass on the weight of the evidence in considering the size of a verdict (State ex rel. A., T. & S. F. Ry. Co. v. Ellison, supra, 268 Mo. 225, 186 S. W. 1075; State ex rel. Am. C. & F. Co. v. Daues, supra, 313 Mo. l. c. 688, 282 S. W. l. c. 390), whereas appellate courts do not weigh the evidence in reviewing a law case (Pulliam v. Wheelock, 319 Mo. 139, 147-8, 3 S. W. (2d) 374, 377; Keller v. St. L. Butcher's Supply Co. (Mo.), 229 S. W. 173, 175); and in view of their better opportunity to measure the general effect of the trial proceedings on the jury, they may infer prejudice and bias from the size of the verdict alone, a thing which, as we have seen is held, appellate courts cannot do. In ruling the verdict in this case was so inadequate as to indicate prejudice and bias, the trial court necessarily concluded the verdict was for substantially less than it ought to have been under the evidence—in other words it held the verdict was so much against the weight of the evidence as to show bias and prejudice. On neither of these grounds would this court be justified in interfering under the record presented. Most of the cases already cited so hold, and the same is declared in Platt v. Cape Girardeau Bell Telephone Co. (Mo. App.), 12 S. W. (2d) 933, 936; King v. Mann, 315 Mo. 318, 327, 286 S. W. 100, 104; Ostrander v. Messmer, 315 Mo. 1165, 1181, 289 S. W. 609, 616; Cullison v. Wells, 317 Mo. 880, 887, 297 S. W. 370, 373; MacDonald v. O'Day, 319 Mo. 857, 864, 5 S. W. (2d) 374, 377; Guthrie v. Gillespie, 319 Mo. 1137, 1146, 6 S. W. (2d) 886, 889; State ex rel. Iba v. Ellison, 256 Mo. 644, 661, 165 S. W. 369, 373-4; Peper v. Peper, 241 Mo. 260, 265, 145 S. W. 408, 409.

IV. The respondent argues that aside from the grounds upon which the trial court based its action in awarding a new trial, there was error in the instructions given for appellant which would necessitate a new trial. But we shall not go into these questions, as no authorities are cited and the errors complained of will probably disappear if the case is tried again. The same can be said of the complaint respecting the argument of counsel for appellant, and the remarks of the court.

For the reasons given the order of the trial court granting a new trial is affirmed, and the cause remanded. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.