WILLIAM F. WEBB v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—116 S. W. (2d) 27.

Division Two, May 3, 1938.*

*NOTE: Opinion filed at May Term, 1937, August 26, 1937; motion for rehearing filed; motion overruled December 17, 1937; motion to transfer to Court en Banc filed; motion overruled at May Term, 1938, May 3, 1938.

(394)

*Cooper, Neel, Kemp & Sutherland, Carl S. Hoffman* and *Frank J. Rogers* for appellant.

*Madden Freeman & Madden* for respondent.

WESTHUES, C.—Respondent, Webb, obtained a verdict in the sum of $25,000, as damages against appellant railroad company for personal injuries alleged to have been sustained when one of defendant's trains was derailed. The trial court overruled appellant's motion for a new trial, upon condition that plaintiff enter a *remittitur* in the sum of $15,000. Plaintiff did so and the trial court entered a judgment for plaintiff for $10,000. Defendant appealed.

Appellant did not contend at the trial that plaintiff failed to make a case of liability. The sharp issue was the extent of plaintiff's injuries. Plaintiff was employed in the postal department as a railroad postal clerk. On January 21, 1933, plaintiff was on duty on a train operated, by the defendant, between Denison, Texas, and Kansas City, Missouri. When the train reached a point near Crowder, Oklahoma, it was derailed. The mail car turned over into a ditch and plaintiff was injured. Plaintiff introduced evidence that at the point of derailment there was a junction of a new and old roadbed; that the train was traveling at an unusual

rate of speed, considering the condition of the roadbed. We need not detail the evidence, as no point is made here as to liability.

Appellant has briefed five points upon which a reversal of the judgment is sought. The first two pertain to the *voir dire* examination of the prospective jurors. In the third it is contended that the verdict was so excessive as to disclose passion and prejudice on the part of the jury; in the fourth, that the judgment of $10,000 was grossly excessive, and in the last assignment it is contended that the trial court erred in failing to sustain appellant's objection to plaintiff's hypothetical question propounded to Dr. W. R. Jackson. We will dispose of these in the order named.

■ Five of the prospective jurors, on *voir dire* examination, disclosed that they had had claims or suits for damages for personal injuries. One of the jurors was receiving compensation on a claim for injuries. This fact alone does not justify a challenge for cause. It was not shown that any of the five jurors had had a claim against the defendant in this case. The attorneys are entitled to ask such questions for their own information so as to enable them to intelligently make their peremptory challenges, or to develop further information which might lead to a challenge for cause. Upon the showing made the trial court did not err in refusing to grant appellant's challenges for cause. [Parlon v. Wells, 322 Mo. 1001, 17 S. W. (2d) 528; Smith v. Kansas City Public Service Co. (en Banc), 328 Mo. 979, 43 S. W. (2d) 548, 1. c. 556 (25, 26).]

■ The next contention is, that juror Lyman Coffin answered that he had had a claim for personal injuries and upon further questioning detailed the facts with reference thereto. It is asserted, however, that this juror willfully withheld the information that he had had many such claims. Appellant filed affidavits showing about twenty-five claims of this juror. Many of these were insignificant. Coffin was selected as one of the jurors to try the case. Appellant also filed an affidavit showing that the information concerning the claims of the juror did not come to the knowledge of the defendant or its attorneys until after the verdict. The same firm of lawyers which represented appellant in this case, represented the defendant in the case wherein the juror was plaintiff, which was the case that the juror mentioned on his *voir dire* examination. The information concerning the numerous claims of this juror was in the files of that case. It was shown that the member of the firm who handled that case did not participate in the case on trial. This controversy brought forth charges and countercharges, between the attorneys, concerning their good faith. The contention is made, by respondent, that the juror could not be charged with bad faith, because the manner in which he was questioned indicated that all

that was wanted to be known was, whether he had, at any time, had a claim for personal injuries. From the view we take of this case it will not be necessary for us to settle all these questions. Under the facts proven, plaintiff was entitled to a verdict against the defendant for the injuries sustained. The trial court exercised its discretion and reduced the verdict from $25,000 to $10,000, by ordering a new trial unless the *remittitur* was entered. If that judgment of $10,000 is still excessive a further *remittitur* can be ordered by this court. With a clear case of liability and the courts exercising their power to adjust the question of the amount of damages, in what manner can the defendant be hurt by the juror's concealment of claims he had had. The general rule is, that error in refusing to grant challenge for cause is no ground for reversal where it is clear that no prejudice resulted. [4 C. J. 951, 952, sec. 2932; Parlon v. Wells, supra; Missouri Pac. Ry. Co. v. Brown (Kan.), 47 Pac. 553.] Had there been a question of liability in this case we would have had a different situation and indeed a grave question, because the objectionable juror was retained on the panel of twelve to try the case. In the administration of justice it is all important that unbiased jurors be selected. This matter should always receive close attention on the part of trial courts and the rules of law pertaining thereto should not be relaxed. Where there is a dispute as to liability, and an objectionable juror is permitted to try the case, it is difficult to conceive how that could be harmless error, unless waived by the losing party, even though there be a unanimous verdict. We are ruling the point against appellant solely on the ground that we are of the opinion that in any event plaintiff in justice would be entitled to a judgment. The amount thereof was controlled by the trial court. There is no charge here that the evidence plaintiff introduced as to his injuries was tainted, or was not substantial.

■ We are of the opinion that the verdict of $25,000 did not of itself indicate passion and prejudice on the part of the jury. Plaintiff received more than minor injuries. We will discuss them later. This court has in many cases ordered *remittiturs* and adjusted the amount of the verdicts and judgments, and has held that an excessive verdict does not necessarily show passion and prejudice. [See Peterson v. Kansas City, 324 Mo. 454, 23 S. W. (2d) 1045, l. c. 1049 (11); Sofian v. Douglas, 324 Mo. 258, 23 S. W. (2d) 126, l. c. 129 (3), and cases there cited; Clifton v. Kansas City So. Railroad Co., 232 Mo. 708, 135 S. W. 40, l. c. 42 (2).]

Was the verdict excessive? We think so, and the trial court wisely ordered a *remittitur*. The question before us is whether the judgment of $10,000, as entered by the trial court, is still excessive. In approaching this question we must keep in mind that the trial judge

gave this question serious consideration, as evidenced by the order of a *remittitur* of $15,000. The rule to be followed in determining this question was stated by RAGLAND, J., in Peterson v. Kansas City, supra, as follows:

" . . . The question of excessiveness of the verdict must be considered from somewhat the same angle as a demurrer to the evidence—all the evidence tending to support the verdict must be taken as true."

Aside from receiving many bruises which disappeared, plaintiff suffered an injury commonly designated as a sacroiliac sprain. Dr. Jackson, who treated plaintiff, testified that this injury had caused plaintiff much pain and distress; was of a permanent nature, and would continue to cause plaintiff much pain and discomfort; that plaintiff was incapable of performing any manual labor; that the injury caused a limp; that plaintiff would be required to wear a sacroiliac belt for the balance of his life. The evidence of Dr. Jackson was corroborated by a number of other doctors. The injuries sustained by plaintiff in this case, judging from the evidence, were of a more serious nature than the injuries sustained by the plaintiffs in the cases of Zichler v. St. Louis Public Service Co., 332 Mo. 902, 59 S. W. (2d) 654, and Carpenter v. Wabash Ry. Co., 335 Mo. 130, 71 S. W. (2d) 1071. In each of these cases a recovery of $10,000 was sustained. In Gatley v. St. Louis-San Francisco Railroad Co., 332 Mo. 1, 56 S. W. (2d) 54, l. c. 63 (25), a judgment for $20,000 was affirmed. In that case Gately had suffered an injury to the sacroiliac joint. The injuries, however, were of a more serious nature than those of plaintiff in this case. Webb, the plaintiff in this case, was a strong, healthy man, prior to sustaining the injuries complained of herein. He had been a railroad postal clerk for thirty-two years. He was fifty-five years old at the time of the trial, which was nearly two years after the injuries were sustained. Considering his injuries, we cannot say that $10,000 is so excessive as to justify our interference.

In the last assignment of error briefed, appellant contends that the trial court erred in permitting Dr. Jackson to answer a hypothetical question over appellant's objection. After testifying with reference to plaintiff's injuries the following occurred:

"I will ask you, Doctor, whether or not, in your opinion, the injury and the conditions which you have mentioned, including the mass which you have described, were caused by that accident? A. I should say—

"Mr. NEEL (interrupting): I think the form of that question is objectionable.

"Mr. MADDEN: In what respect?

"Mr. NEEL: Asking for the ultimate fact; invading the province of the jury; asking for an ultimate fact. I object to it.

"The COURT: Overruled. (To which action and ruling of the court the defendant then and there duly excepted at the time and still excepts.)

"The COURT: You may answer. . . . A. I consider the condition he had certainly could be attributed to the injury that he sustained."

We are of the opinion that the trial court did not err in its ruling. In this case there was no dispute that plaintiff was injured as the result of the wreck. There was substantial evidence, aside from the evidence of the medical experts, that plaintiff's injuries were the result of the accident. The opinion of the doctor, that the condition of plaintiff could be attributed to the injuries sustained, was legitimate evidence. It will be noted that the doctor did not testify that plaintiff's injuries were caused by the defendant's negligence. The doctor stated that plaintiff's condition could have been the result of the injuries sustained. That these injuries were sustained in the wreck was proven by other evidence. This court ruled upon this point in Kimmie v. Terminal Railroad Assn. of St. Louis, 334 Mo. 596, 66 S. W. (2d) 561, l. c. 565 (9-11), where this court said:

"We do not hold, however, as defendant contends, that it is improper to ask an expert witness if something might, could, or would produce a certain result. An expert's view of possibility or probability is often helpful and proper. [22 C. J. 623, secs. 713, 714; 11 R. C. L. 582, sec. 12, p. 633, sec. 52; 4 Wigmore on Evidence, 198, sec. 1976.] Where there are other facts which tend to show an accident caused a certain condition, the assurance of an expert that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts."

That language and rule is applicable to the situation here.

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.