Catherine ROSSOMMANO (Plaintiff), Respondent,

v.

QUALITY DAIRY COMPANY, Inc. (Defendant), Appellant.

No. 29562.

St. Louis Court of Appeals.

Missouri.

Jan. 2, 1957.

Robert Nagel Jones, Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for appellant.

Jack H. Ross, Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action for damages for personal injuries alleged to have been sustained by reason of the presence of broken glass in a bottle of buttermilk purchased by plaintiff from the defendant. A jury returned a verdict in favor of plaintiff in the sum of $3,000. Thereafter, defendant filed its motion for judgment in accordance with its motion filed at the close of all the evidence, or, in the alternative, for a new trial. The trial court overruled the motion upon the filing of a remittitur of $1,000, in response to a previous order. Thereupon a final judgment was entered for $2,000. From this judgment defendant has appealed.

Appellant's sole assignment of error is that the judgment is excessive. This necessitates a review of the medical testimony and other evidence bearing on the nature and extent of plaintiff's injuries.

On the morning of April 7, 1953, plaintiff purchased a quart of buttermilk from the defendant. Immediately after the purchase plaintiff placed the buttermilk in the refrigerator. Later that morning plaintiff poured about one-half of the contents of the bottle into a drinking glass and drank it. At that time she noticed nothing unusual about the buttermilk. She then replaced the top on the bottle and returned it to the refrigerator. The next morning she again obtained the bottle from the refrigerator and filled a drinking glass with its contents. She then drank from the glass, at which time her mouth became filled with pieces of glass. She felt pain in her throat, and started to vomit. There was blood in her vomit. Plaintiff became frightened and went to see Dr. John M. Parato at the latter's office. She received some medicine from the doctor. For a week thereafter she continued to vomit and developed diarrhea. She became nervous, her heart beat rapidly, and a pain developed in her chest.

Dr. Parato testified that when plaintiff consulted him she complained of having

drunk some glass out of a bottle of milk. He stated that she was quite frightened because she was convinced that she had swallowed some of the glass. She felt that her stomach was giving her some pain, and for that reason she was not able to digest her food properly. She wanted to know if it were possible to have an X-ray taken to determine whether glass was present in her stomach. The doctor told her that glass would not show up in the X-ray, but that he could give her some medicine to create a bulk in her stomach so that if there were glass there it could be eliminated in the normal way. The doctor examined her mouth and throat. He discovered some punctiform hemorrhages on the side of the tongue, and on the cheeks, which could have been caused by glass. The doctor further testified:

"Q. How about vomiting, or anything like that? A. Well, she had that too. And I always told her to watch if she had any blood in it, well, it would be an indication that some pieces of glass could be in the stomach yet. And she always told me that this was barely yellowish or greenish, like we usually notice in gall bladder conditions. Naturally, this stayed on a few days later. * * * I asked her about her bowels functioning. They were all right. She had eliminated all the bulk that I gave her, so I was practically convinced that whatever was left, if any, of the glass, probably they were already eliminated in the bowels in the normal way."

About a week after her misadventure plaintiff went to the clinic of Deaconess Hospital. This was after her pulse became rapid and after she developed pain in the chest. She went there of her own volition because she had been treated at the clinic for a gall bladder condition for about seven years. At the clinic an electrocardiogram was taken, which was negative. Dr. Parato testified that he assumed that the chest complaint was a recurrence of the gall bladder condition. He stated: "Sometimes the heart gives some symptoms that are symptoms of the gall bladder, and vice versa, the gall bladder sometimes gives heart symptoms. * * * I believe she was so frightened it might have caused her heart to beat fast, and be a little irregular at that time." He stated that it was his opinion that it was the fright which gave rise to the heart condition. The doctor gave plaintiff sedatives for this condition. He stated: "She improved all right the following days. But certainly up in her mind there was still the idea she had something inside herself that was causing that." The pain in plaintiff's chest disappeared in two or three weeks. The doctor further testified:

"Q. * * * Now, do you have any opinion as to whether or not this drinking milk with the glass in it, and fright, and vomiting, and diarrhea, and those symptoms and results, would have any effect on her gall bladder condition? A. I believe it had. * * * We definitely know that the gall bladder is very sensitive to a nervous condition. Sometimes just nervous shock is enough to bring about a gall bladder attack. So I presume the state of fright she was in was enough to cause a gall bladder condition—a recurrence of it.

* * * * * *

"Q. * * * Would it be correct for me to call it an aggravation to her gall bladder condition? A. Yes, I do."

The doctor further testified that plaintiff improved after he started taking care of her; that whatever aggravation the gall bladder condition may have suffered, it cleared up in two or three months.

Both Dr. Parato, and Dr. Funsch who testified on behalf of defendant, stated that a gall bladder condition such as plaintiff had been suffering from would produce vomiting, as well as nausea and diarrhea.

It is urged that the evidence is insufficient to prove that any of the alleged injuries, except the punctiform cuts in plaintiff's mouth, directly resulted from the glass which came from the bottle of buttermilk. An examination of the record discloses that there is no merit to this contention. The proof shows that plaintiff's nervousness, brought on through fright, caused an aggravation of a gall bladder condition, which aggravation lasted for a period of two or three months.

It is next urged that even though it be conceded that there is a causal relation between the aggravated condition of plaintiff's ailment, the judgment is grossly and shockingly excessive. In passing on this issue we must accept as true all evidence and inferences favorable to plaintiff, and disregard all evidence which conflicts therewith. Henderson v. Dolas, Mo.Sup., 217 S.W.2d 554; Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780; Mickel v. Thompson, 348 Mo. 991, 156 S.W.2d 721; Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045; Webb v. Missouri-Kansas & Texas R. Co., 342 Mo. 394, 116 S.W.2d 27. We cannot weigh the evidence or pass upon the credibility of the witnesses. That is the privilege and duty of the trial court when considering the question of excessiveness on the motion for new trial. Hunt v. Gillerman Iron & Metal Co., 327 Mo. 887, 39 S.W.2d 369; Stegner v. Missouri-Kansas & Texas R. Co., 333 Mo. 1182, 64 S.W.2d 691. This court can only interfere where excessiveness appears as a matter of law; that is, when the verdict is clearly for an amount in excess of the very most that the proof of damages would reasonably sustain, and then only when the judgment is excessive to the degree that it shocks the conscience of the court. Mickel v. Thompson, 348 Mo. 991, 156 S.W.2d 721; Biener v. St. Louis Public Service Co., Mo.App., 160 S.W.2d 780; Montana v. Nenert, Mo.App., 226 S.W.2d 394.

It may be conceded that the verdict, even after the remittitur ordered by the trial court, is very substantial for the character of the injuries sustained. However, the trial judge, who heard the testimony and who was in a better position to judge of the credibility of the witnesses, exercised his discretion and determined that $2,000 would be a fair and reasonable compensation for plaintiff's injuries. We have reviewed the evidence touching on this issue and have concluded that, under all the facts and circumstances, this court would not be warranted in disturbing the verdict.

The judgment is affirmed.

MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.