Ellen E. ALFULTIS, Plaintiff-Respondent,

v.

BI–STATE DEVELOPMENT AGENCY, a corporation, and Bob Jines, Defendants-Appellants.

Nos. 33043, 33044.

St. Louis Court of Appeals.

Missouri.

Feb. 3, 1969.

Motion for Rehearing or to Transfer to Supreme Court Denied

March 25, 1969.

John D. Schneider, St. Louis, for defendant-appellant Bi-State.

Leritz & Leritz, St. Louis, for defendant-appellant Jines.

Albert E. Schoenbeck, St. Louis, for plaintiff-respondent.

WOLFE, Judge.

This is an action for damages arising out of personal injuries sustained by the plaintiff when she was thrown against an upright bar by the door of defendant Bi-State's bus, on which she was a passenger. This occurred by reason of a collision between the bus and a car operated by defendant Bob Jines. There was a verdict and judgment for the plaintiff in the sum of $7,000 against both defendants. After their motions for judgment in accordance with their motions for a directed verdict and motions for a new trial filed by both defendants had been overruled, both defendants in due time appealed.

■ In relation to the points raised as to the sufficiency of the evidence, we are obliged to view it in a light favorable to the prevailing plaintiff and we shall so state the facts.

The plaintiff was returning home from her work. As the bus was traveling eastwardly on Natural Bridge it approached the intersection of Jefferson Avenue. She signaled for the bus to stop and walked toward the front exit. A collision occurred and she was thrown toward the front of the bus against an upright steel bar. She stated that her body twisted around it, resulting in the injuries for which she seeks to recover. She did not observe the traffic lights which control the traffic at the intersection, nor did she see Jines' Volkswagen before the collision. The evidence as to her injuries will be set out in our consideration of related points.

The lights controlling the traffic on these two streets are of the usual variety. When the lights facing east and west bound traffic on Natural Bridge are green indicating "Go" for the east and west traffic on Natural Bridge, they are red facing the traffic going north and south on Jefferson and that traffic may not proceed, and vice versa. Jefferson Avenue has five lanes for northbound traffic and three lanes for southbound: Natural Bridge has four lanes for eastbound and four for westbound.

Plaintiff called as her witness defendant Jines. He stated that on November 11, 1964, around 5:00 P.M., he was driving his car northwardly on Jefferson Avenue. He said that as he approached the intersection of Natural Bridge he was traveling at a speed of thirty miles per hour. He was driving in the second lane from the curb and there were other northbound cars stopped in the lanes to his left. He noticed that the traffic light facing him was red and he reduced his speed to about ten miles per hour. When he reached a point forty feet south of the intersection the light turned green and the cars on his left started up. He started to accelerate his speed, but when he was twenty feet south of the intersection he noticed that the cars to his left were slowing down and stopping, and he began to slow up. When he reached the curb line he saw the bus near the center of the intersection. It was in the curb lane and traveling at an estimated speed of thirty-five miles per hour. Jines slowed his speed somewhat but traveled three to five feet and hit the front right corner of the bus.

The plaintiff introduced in evidence the deposition of the bus operator. In his tes-

timony by deposition he stated that he was traveling eastwardly on Natural Bridge in the second lane from the south curb. He stated that the traffic light was green for eastbound traffic when he first saw it and as he was crossing the intersection. He first saw the Volkswagen when the bus was twenty to twenty-five feet west of the east curb of Jefferson Avenue. His bus was then traveling at a speed of twenty to twenty-five miles per hour. The Volkswagen was coming past a line of stopped cars at a speed of twenty to twenty-five miles per hour but had not yet reached the south curb line of Natural Bridge. The left front fender of the Volkswagen struck the right side of the bus bumper.

The plaintiff rested her case on the evidence set out above, and her own testimony and other evidence as to her injuries which will be stated later.

Defendant Bi-State called its driver as a witness and his testimony was in most respects the same as that previously given by the deposition offered by the plaintiff. Again he stated that he saw the Volkswagen when the bus was twenty to twenty-five feet west of the east curb of Jefferson. He said that the Volkswagen was in the second lane from the east curb and was two or three feet into a cross-walk at that place. He did not sound his horn but applied his brakes and swerved slightly to his left. He said he could and did bring his bus to a stop in sixty feet. He said that when the bus was sixty feet west of Jefferson he could see about one block to the south.

Three witnesses who had been passengers on the bus testified that it had the green light. One said that when the bus was half way through the intersection he saw the Volkswagen twenty to twenty-five feet back from Natural Bridge traveling at a speed of twenty to thirty miles per hour and the bus was traveling at the same speed. He said that he could "guess" that he saw the Volkswagen fifty or sixty feet back from the intersection. Another passenger stated that the bus was in the curb lane of

Natural Bridge and more than half way through the intersection traveling twenty-five miles per hour when the Volkswagen was five feet south of a cut-off which was twenty-five feet from the intersection. The other witness did not testify about the position or speed of the vehicles. Testimony touching upon the alleged injuries of the plaintiff was also offered by the defendant Bi-State.

Defendant Jines did not testify but put on a witness named Salas. Salas stated he was standing on the northwest corner of Natural Bridge and Jefferson waiting to cross the street to the east but the light was red. It was red for eastbound traffic when the bus went through. He said there were no northbound vehicles on Jefferson other than the Volkswagen and it was several car lengths from the intersection when he saw it.

Both appellants contend that the court erred in giving instructions designated as No. 3 and No. 4. Instruction No. 3 was as follows:

"Your verdict must be for plaintiff Ellen E. Alfultis and against defendant Bi-State Development Agency, if you believe:

First, the bus driver Holley either:

failed to keep a careful lookout, or violated the traffic signal, and

Second, the bus driver Holley's conduct, in any one or more of the respects submitted in Paragraph First, was negligent, and

Third, as a direct result of such negligence, the plaintiff sustained damage."

Instruction No. 4 was the same as Instruction No. 3 except for the substitution of the name of defendant Jines for that of Bi-State. It is the contention of both defendants that the instructions were conflicting and contradictory. In discussing the requisites of an instruction to cover a similar situation in Levin v. Caldwell, Mo.,

285 S.W.2d 655, 1. c. 660, the Supreme Court said:

"Since it appears that this case will likely be retried, we deem it prudent to mention that plaintiff cannot recover against both defendants under instructions based upon the hypothesized fact that each entered the intersection against the red light. If, upon another trial, there is a submission against Caldwell of negligence in failing to obey the red traffic signal, and a submission against Kotelow of excessive speed predicated upon a finding of the essential fact that he entered the intersection when the red signal was being exhibited in his direction, the jury must be instructed that it cannot return a verdict against both defendants based upon a finding for plaintiff on each of these submissions. This is not to say that plaintiff is precluded from recovering against each defendant on assignments of negligence properly submitted."

The plaintiff-respondent in our case relies on Brown v. Parker, Mo.App., 375 S.W.2d 594, which involved a collision at a controlled intersection. In that case each of the instructions referred to the other and required and predicated joint liability on the failure of one motorist to keep a lookout as one ran through the stop sign. We do not have such an instruction here and the instructions are in conflict with each other. No other instruction was given to guide the jury out of the conflict presented. We must therefore reverse the judgment as to liability for this error. Coursey v. Hawthorne, Mo.App., 389 S.W.2d 847.

As to her injuries the plaintiff testified that at the time of trial she was twenty-two years of age and she was in good health prior to the accident and had no disability in her neck or back. She was employed by the Curtis Manufacturing Company as an office worker prior to the accident. After the accident she could hardly walk; she was in a bent forward position. She suffered pain in her neck and back and had severe headaches. She went to work on the two days following the accident and continued to work for the next two weeks, but she saw her doctor, a Dr. Ringland, in Cape Girardeau on Saturdays. She quit her job on November 27 and moved to her parents' home in Cape Girardeau. She was hospitalized for ten days and continued under treatment by her doctor, seeing him once a month until November of 1965.

She did not work again until August, 1965. She said that she lost thirty-nine weeks of work and that her earnings had been $56.00 a week. Her medical expenses were $530.00. She stated that at the time of trial, May, 1967, her neck and back continued to give her occasional pain. She said that when sitting or standing her neck and back hurt and she could no longer bowl.

The deposition of her physician, Dr. George W. Ringland, was offered in evidence by the plaintiff and he testified that plaintiff suffered a "whiplash injury to the cervical lumbar spine." He said that she sustained an injury to "the muscles, ligaments and tissues causing a referred strain on the vertebrae without fracture." He testified that with reasonable medical certainty, the accident caused the injuries and caused the rotation of the cervical lumbar vertebrae. The rotation of the fifth vertebra caused plaintiff's pelvis to become tilted and her leg shortened so that one of her legs was "probably in the neighborhood of three-quarters to an inch" shorter than the other leg.

■ It is contended by the appellant that the court erred in admitting testimony as to the shortening of plaintiff's leg in that it was not pleaded. The injuries pleaded are as follows:

"'Plaintiff was bruised, contused, wrenched, strained and jarred, and made sore and lame in all parts of her body, head, face, arms, hands, legs and feet; her back, spine, spinal column, chest, ribs, legs, stomach, hips and joints, as well as all of the muscles, bones, tendons, ligaments, tissues, nerves, vertebrae and blood

vessels thereof and connected therewith were brusied, contused, wrenched, sprained, twisted and made lame and sore.

" 'Plaintiff sustained a concussion of the brain, a ligamentous injury of the spine, an acute sprain of the neck (commonly called a whiplash injury), an acute sprain of the spine, and soft tissue injury to the nerves, muscles, ligaments and blood vessels of the neck and back and sciatic region, with a rotation of the vertebrae of the spine and nerve root pressure.' "

The pleadings are very broad and upon proper motion by defendant could have been made more definite and certain, but no such motion was made. Since the petition included in the injuries asserted the spinal column, hips and joints and vertebrae connected with them we find that the pleading was sufficient to include the tilted pelvis and the attendant shortening of the leg. The pelvis supports the spinal column and rests upon the lower extremities. The tilting of it would necessarily shorten the leg. The point is without merit. McCauley v. Anheuser-Busch Brewing Ass'n, 300 Mo. 638, 254 S.W. 868; Long v. Fulkerson, 228 Mo.App. 1230, 74 S.W.2d 879.

■ There was an objection to a reading of a portion of the deposition of Dr. Ringland and it is contended that the court erred in overruling the motion. Ringland had been subpoenaed by the defendant Bi-State in order to have him present in court and thus to prevent the reading of his deposition. He was not in court during the morning session of the trial at which time the major portion of his deposition was read without objection. The court convened for its afternoon session about 2:00 P.M. and after fifteen minutes of further reading of the deposition counsel for Bi-State objected to any further reading of the deposition because the witness, Dr. Ringland, had just come into the court. This objection came after sixty-two transcript pages of the deposition had been read and there remained only a few questions and answers that took up two pages of the transcript. The court overruled the objection and properly so. There is no showing of how the defendant was prejudiced by the action of the court. Had the court sustained the objection there would have been a needless interruption of an orderly trial.

■ It is also asserted that there was no substantial evidence that the shortening of the leg was caused by the accident. Appellant's argument on this point goes to the credibility of plaintiff's doctor. That was a question for the jury to decide, and the point is without merit.

■ The last point raised is that the verdict is grossly excessive. The plaintiff proved a loss of wages amounting to $2,084.00 and medical expenses of $530.00. In view of this the amount of damages for the injuries alone would be around $4,400.00. We can act only when excessiveness appears as a matter of law; that is, when the verdict is clearly for an amount in excess of the very most that the proof of damages could reasonably sustain, and then only when judgment is excessive to the degree that it shocks the conscience of the court. Rossommano v. Quality Dairy Company, Mo.App., 297 S.W.2d 591, l. c. 594. We do not find the verdict excessive and for the reasons stated the cause is reversed and remanded for a new trial on the issue of liability only.

ANDERSON, P. J., and RUDDY, J., concur.